BAMIDELE HAMBOLU
1230 Market Street #4
San Francisco, CA 94102

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

BAMIDELE HAMBOLU AND DOES 1-10 )

et al., )

           Plaintiffs, )

        vs., )

SAN FRANCISCO HOUSING
AUTHORITY; HENRY ALVAREZ III;
TIM LARSEN; NICOLE DICKERSON-
MCCRAY; BARBARA SMITH; AMOS
BROWN; CITY AND COUNTY OF SAN
FRANCISCO DOES; NATHANAEL
PLAYER; HOMELESS ADVOCACY as
individuals and official capacity DOES 1-
25 et al.,

Defendants

Case No.: **CV 14 3020**

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

1. DECLARATORY RELIEF;
2. INJUNCTIVE RELIEF;
3. CONSPIRACY TO COMMIT FRAUD;
4. FRAUD;
5. NEGLIGENCE;
6. BREACH OF CONTRACT;
7. INTENTIONAL TORT;
8. BREACH OF IMPLIED COVENANT OF FAIR DEALING;
9. MISTAKE;
10. DURESS;
11. RETALIATORY EVICTION;
12. DISCRIMINATION UNDER; FEDERAL GRANTS AND PROGRAM;
13. DEPRIVATION OF DEPRIVATION OF RIGHTS; Cal. Civ. Code § 54.1 (b) (1)(2)(3)(A)(B)];
14. DEPRIVATION OF RIGHTS [42 U.S.C. § 1983; US CONST. AND AMENDMENTS 1,4,5,6,8,14];
15. INTERPLEADER

1

2  _____

3  _____

4

## TABLE OF CONTENTS

5

6  1.  DECLARATORY RELIEF;

7  2.  INJUNCTIVE RELIEF;

8  3.  CONSPIRACY TO COMMIT FRAUD;

9  4.  FRAUD;

10  5.  NEGLIGENCE;

11  6.  BREACH OF CONTRACT;

12  7.  INTENTIONAL TORT;

13  8.  BREACH OF IMPLIED COVENANT OF FAIR DEALING;

14  9.  MISTAKE;

15  10.  DURESS;

16  11.  RETAILIATION EVICTION;

17  11.  DISCRIMINATION UNDER FEDERAL GRANTS PROGRAM;

18  13.  DEPRIVATION OF HOUSING ACCOMMODATIONS;

19  14.  DEPRIVATION OF RIGHTS [42 U.S.C. § 1983; US CONST. AND     AMENDMENTS
20  1,4,5,6,8,14];

21  15.  INTERPLEADER;

22

23

24

25

26

27

28

## **EXHIBITS**

1.   Claim for submitted to San Francisco Housing Authority

2.   Rental Lease

3.   Doctor's Letter

4.   HUD Letter from Melina Whitehead

5.   HUD Region IX Letter from Regional Administrator Basgal

6.   HUD Headquarters Letter to Lead Counsel Helen Kanosky

7.   September 19, 2011 – Three Day Notice

8.   August 24, 2011 – Three Day Notice

9.   SFHA Termination Notice on August 7, 2012

10.  SFHA Termination Notice on August 6, 2012

1

2                            **INTRODUCTION**

3

4         1.      Plaintiff Bamidele Hambolu, son of Plaintiff Gavin a single parent with children

5   and qui tam plaintiff, hereby incorporates by reference into this Verified Complaint Plaintiffs

6   Bamidele Hambolu and Lynn Gavin Complaint ("Complaints").

7         2.      The allegations in this Verified Complaint stated on information and belief are

8   likely to have evidentiary support after a reasonable opportunity for further investigation or

9

10  discovery. Id.

11        3.      This is an action for declaratory, injunctive relief, damages and  punitive damages

12  against all defendants for fraud in accordance to Cal.Civ.Codes §§1572, 1709, 1710, 1711

13  negligence and malice.

14

15        4.      These defendants San Francisco Housing Authority, Henry Alvarez III, Amos

16  Brown, Tim Larsen, Nicole Dickerson-McCray, Barbara Smith, Homeless Advocacy Project and

17  Nathanael Player, and each of them, are and at all times herein mentioned were, affiliated with

18  defendants San Francisco Housing Authority, HUD Region IX, Homeless Advocacy Project and

19  HUD headquarters for violations of Plaintiffs Bamidele Hambolu, Lynn Gavin,  Plaintiff Gavin's

20

21  Family and assisted animals (Sir Daniel) and (Lady Ebony) rights in accordance to 42 U.S.C. A.

22  § 1437f(d)(1)(B)1 "Federal Regulations," "Breach of Contract"  in accordance to Cal. Civ.

23

24

25

26

27

──────────────────

28  1 42 U.S.C. A. § 1437f(d)(1)(B) Subsided Housing: federal regulations are mandatory as they set guidelines for
    evictions.

Code 337(3)2, "Reasonable Accommodation" ADA §504, 42 U.S.C. §3602(h)3 American with

Disabilities Act, Cal. Civ. Codes §12955.3; §52 and §52.1 (Unruh Civil Rights Act), retaliation

eviction Cal.Civ.Code § 1942.5 "reasonable accommodation" rights, Constitutional Rights 42

U.S.C. § 1983; U.S. Constitution and Amendments [1,4,5,6,8,14] Civil rights resulting from

the subsidized housing contract and animal cruelty in accordance to Cal. Pen Code 5974. These

violations of Plaintiffs' rental lease, policies, practices for usurious third-party billing for utilities

(water, sewer and garbage) "Deceit," "Fraud," "Constructive Fraud," "Breach of Section 8

---

2Cal. Civ. Code 337(3) Breach of Contract: An action based upon the rescission of a contract in writing. The time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake. Where the ground for rescission is misrepresentation under Section 359 of the Insurance Code, the time does not begin to run until the representation becomes false.

342 U.S. C. §3605(h) Reasoanble Accommodation: "Handicap" means, with respect to a person—
(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
(2) a record of having such an impairment, or
(3) being regarded as having such an impairment,
4Cal. Penal Code.597 (c):(c) Every person who maliciously and intentionally maims,
mutilates, or tortures any mammal, bird, reptile, amphibian, or fish,
as described in subdivision (e), is guilty of a crime punishable pursuant to subdivision (d)

VERIFIED COMPLAINT - 4

contract a.k.a. HAP" in accordance to Cal. Civ. Codes §§ 17095; §17106; §17117; §15728;

§15739 and 24 C.F.R. §982.453(a)(1)(2)(3)10 Housing Assistance Payment (HAP) Contract.

5.    Plaintiffs Bamidele Hambolu, Lynn Gavin, Plaintiff Gavin's Family and assisted

animals seek declaratory and injunctive relief, damages and punitive damages against

defendants HUD Region IX Office, HUD Washington DC Office, San Francisco Housing

Authority, City and County of San Francisco for the policy and practice of "breach of contract,"

"contract fraud" for non-disclosure of demolition and "constructive eviction" through usurious

third-party billing for outstanding utility bills, in violation of HUD handbook regulations

---

5 Cal. Civ. Code §1709 Deceit: One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

6 Cal. Civ. Code §1710 Deceit: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise, made without any intention of performing it.

7 Cal. Civ. Code §1711 Deceit: One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit.

8 Cal. Civ. Code §1572 Fraud: Actual fraud consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

3. The suppression of that which is true, by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.

9 Cal. Civ. Code §1573 Constructive Fraud: One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit.

10 24 C.F.R. §982.453(a)(1)(2)(3) HAP Contract: (a) any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:

(1) If the owner has violated any obligation under the HAP contract for the dwelling unit, including the owner's obligation to maintain the unit in accordance with the HQS.

(2) If the owner has violated any obligation under any other HAP contract under Section 8 of the 1937 Act (42 U.S.C. 1437f)

(3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any federal housing program.

4350.311; 24 C.F.R. 247 (4)(c)12, Federal Housing Authority regulations, 42 U.S.C. § 3604

3(f)(B)(C)(i) Fair Housing Act Amendment Fair Housing Amendments Act (FHAA), 42 U.S.C. §

3604 (f)(3)(B); Cal Fair Emp. And Hous. Act (FEHA), Cal. Gov't Codes §§

12927(a)(c)(1)13, 12955; Federal Law and State Law,Cal. Civ. Code §1954.53514. See also

Green Park Associates v. Inman, 467 N.Y.S.2d 500, 501 (N.Y. Civ. Ct. 1983) (landlords

must comply with HUD Handbook in terminating tenancy in HUD-subsidized housing.)

6. Plaintiffs Bamidele Hambolu and Lynn Gavin, Plaintiff Gavin's Family and

assisted animals seek declaratory and injunctive relief, damages and punitive damages against

defendants HUD Region IX, West Coast Office and HUD headquarters at DC Office.

---

11HUD Handbook Regulations 4350 § 8-13 (b)(2)(c)(3) Notice for Termination of Tenancy: tenant has a right to informal hearing and termination notice must include enough information to provide tenant with adequate defense in court. HUD Handbook regulations are enforceable in court.

12 24 C.F.R. 247 (4)(c): Time of Service: When the termination of the tenancy is based on other good cause pursuant to § 247.3(a)(4), the termination notice shall be effective, and the termination notice shall so state, at the end of a term and in accordance with the termination provisions of the rental agreement, but in no case earlier than 30 days after receipt of the tenant of the notice. Where the termination notice is based on material noncompliance with the rental agreement or material failure to carry out obligations under a state landlord and tenant act pursuant to § 247.3(a)(1) or (2), the time of service shall be in accord with the rental agreement and state law.

13Cal. Civ. Code §12927(a)(c)(1) Housing Discrimination: As used in this part in connection with housing accommodations, unless a different meaning clearly appears from the context:

(a) "Affirmative actions" means any activity for the purpose of eliminating discrimination in housing accommodations because of race, color, religion, sex, marital status, national origin, ancestry, familial status, or disability.

(c)(1) "Discrimination" includes refusal to sell, rent, or lease

housing accommodations; includes refusal to negotiate for the sale,rental, or lease of housing accommodations; includes representation that a housing accommodation is not available for inspection, sale, or rental when that housing accommodation is in fact so available; includes any other denial or withholding of housing accommodations;includes provision of inferior terms, conditions, privileges, facilities, or services in connection with those housing accommodations; includes harassment in connection with those housing accommodations; includes the cancellation or termination of a sale or rental agreement; includes the provision of segregated or separated housing accommodations; includes the refusal to permit,at the expense of the disabled person, reasonable modifications of existing premises occupied or to be occupied by the disabled person, if the modifications may be necessary to afford the disabled person full enjoyment of the premises, except that, in the case of a rental, the landlord may, where it is reasonable to do so condition permission for a modification on the renter's agreeing to restore the interior of the premises to the condition that existed before the modification (other than for reasonable wear and tear), and includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

14Cal. Civ. Code §1954.535. provides: 'Where an owner terminates a contract with a governmental agency that provides for rent limitations to a qualified tenant, the tenant or tenants shall be given 90 days' written notice of the effective date of the termination and shall not be obligated to pay more than the tenant's portion of the rent as calculated under the contract to be terminated for 90 days following receipt of the notice of termination of the contract."

7.    Plaintiff Gavin, Plaintiff Gavin's Family and assisted animal seek declaratory and injunctive relief, damages and punitive damages against defendant Nathanael Player in accordance to Cal.Civ.Code of Civ Procedure 340.6 (a), (4) for malpractice and Nathanael Player's employer Homeless Advocacy Project for violation of Lynn Gavin's rights U.S. Constitutional rights enumerated in the First, Fourteenth Amendments, American with Disabilities and Code of Federal Regulations "C.F.R".

8.    Plaintiff Gavin seek declaratory and injunctive relief, damages and punitive damages against defendants San Francisco Housing Authority and City and County of San Francisco for of Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family as subsidized tenants through "constructive eviction" Cal.Civ.Code §1572 and U.S. Constitutional rights enumerated in the First, Fourteenth Amendments and Code of Federal Regulations "C.F.R".procedures denying them the right of return in violation of defendants development agreement.

9.    Plaintiff Bamidele Hambolu and Plaintiff Lynn Gavin are ignorant of the true names and capacities of defendants sued hereunder as Does 1 – 30, inclusive, and therefore sues these defendants by such fictitious names. These defendants, and each of them, are, and at all times herein mentioned were, affiliated with Defendants HUD Region IX, Homeless Advocacy Project, HUD headquarters at DC, U.S. Department of Veterans Affairs and City and County of San Francisco and are sued herein individually, official capacity and joined as parties defendants in this action. Id.

10.    On July 25, 2012 Plaintiffs Bamidele Hambolu, Lynn Gavin, Plaintiff Gavin's Family and assisted animal were "wrongfully evicted" from their Home at 22 Grijalva Drive, San Francisco, CA.

11.     On March 1, 2010, Plaintiff Gavin signed as the tenant a lease ("Lease") for Plaintiff Gavin's residence at 22 Grijalva Drive, San Francisco, CA 94132 ("Home").  See Exhibit, Lease 2

12.     Plaintiff Gavin has multiple disabilities including a physical impairment mobility disability that substantially limits one or more major life activities such as walking, standing, bending or caring for herself as defined in 42 U.S.C. § 3602(h); Cal. Gov't Code  § 12955.3.

13.     Plaintiff Gavin relies on respiratory medical equipment to aid in breathing and a walker and wheelchair to aid in easing pain in Plaintiff Gavin's body.

14.     Defendants are aware that Plaintiff Gavin is disabled.

15.     Plaintiff Gavin has experienced violations of federal rights under, among others, the American with Disabilities Act, section 504 by Defendants San Francisco Housing Authority intentional refusal to provide Plaintiff Gavin with reasonable accommodations in accordance to 24 C.F. R. 982.517 (2), (e)15 that would allow Plaintiff Gavin's Home to be accessible, home that defendants San Francisco were obligated to provide Plaintiff Gavin.  ("For these reasons we conclude that, under the criteria established in our previous decisions construing the anti-injunction statute, § 1983 is an Act of Congress that falls within the 'expressly authorized' exception of that law.").

16.     Defendants HUD Region IX and HUD headquarters at Washington, DC ignored Plaintiff Gavin's ADA discrimination complaint.  Ibid.

---

15 24 C.F.R. 982.517 (e): (2) At reexamination, the PHA must use the PHA current utility allowance schedule.
(e) Higher utility allowance as reasonable accommodation for a person with disabilities.
On request from a family that includes a person with disabilities, the PHA **must** approve a utility allowance which is higher than the applicable amount on the utility allowance schedule if a higher utility allowance is needed as a reasonable accommodation in accordance with 24 CFR part 8 to make the program accessible to and usable by the family member with a disability.

17. Defendant SFHA denied Plaintiff Gavin's "reasonable accommodation" for assistance with utilities a violates Plaintiff Gavin's rights in accordance to 24 C.F.R. 100.204[16]

18. Plaintiff Gavin made numerous attempts to contact SFHA Commissioners, Mayor, San Francisco City Attorney and San Francisco District Attorney.

## I. **JURISDICTION**

19. The Court has jurisdiction over this action because, *inter alias*, Plaintiff Gavin's claims arise under 28 U.S.C §1331, the Constitution, laws and treaties of the United States and California. Ibid.

20. The issues in dispute arise from Defendants HUD Region IX, City and County of San Francisco, Homeless Advocacy, HUD Washington DC's wrongful conduct against Plaintiff Bamidele Hambolu, Plaintiff Lynn Gavin, Plaintiff Gavin's Family and assisted animals relating to Plaintiffs Home that is situated in San Francisco County, California. Id. This Court therefore has jurisdiction to enter an order and judgment. *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57[17] (1982).

## II. **VENUE**

21. Venue is proper in the U.S. District Court of Northern California, the issues in dispute arise from Defendants HUD Region IX, City and County of San Francisco, Homeless

---

[16] 24 C.F.R.100.204 Reasonable Accommodation: It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

[17] "Basic to the constitutional structure established by the Framers was their recognition that '[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.' The Federalist No. 47, p. 300 (H. Lodge ed. 1888) (J. Madison). To ensure against such tyranny, the Framers provided that the Federal Government would consist of three distinct Branches, each to exercise one of the governmental powers recognized by the Framers as inherently distinct." *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57 (1982).

VERIFIED COMPLAINT - 9

Advocacy, HUD Washington DC wrongful conduct against Plaintiff Gavin relating to Plaintiffs

Home that is situated in San Francisco County, California.  Id.

22.     This Court therefore has jurisdiction to enter an order and judgment.

### III.  PARTIES

23.     Plaintiff name is (Lynn Hambolu) a.k.a (Pastor Lynn Gavin) a.k.a (Gavin) and

Plaintiff (Gavin's) family are individual citizens and residents of the State of California.  Plaintiff

(Gavin) and Plaintiff (Gavin's) family mailing address located at 1230 Market Street #4, San

Francisco, CA  94102.

24.     Plaintiff name is (Bamidele Hambolu) is an individual citizen and resident of

California mailing address located at 1230 Market Street #4, San Francisco, CA  94102.

25.     Plaintiff name is (Doe Gavin Family member) is an individual citizen and resident

of California mailing address located at 1230 Market Street #4, San Francisco, CA  94102.

26.     Plaintiff name is (Doe Gavin Family member) is an individual citizen and resident

of California mailing address located at 1230 Market Street #4, San Francisco, CA  94102.

27.     Plaintiff name is (Sir Daniel) is an assistant animals and residents of California

mailing address located at 1230 Market Street #4, San Francisco, CA  94102.

28.     Plaintiff name is (Lady Ebony) is an assistant animal and resident of California

mailing address located at 1230 Market Street #4, San Francisco, CA  94102.

29.     Defendant San Francisco Housing Authority a.k.a. "SFHA" is located at 1815

Egbert Avenue  San Francisco, CA  94124.

30.     Defendant Nicole Dickerson-McCray is located at 1815 Egbert Avenue  San

Francisco, CA  94124.

31.   Defendant Henry Alvarez is located at 3290 Adeline Street, Berkeley, CA 94703. is located at 1815 Egbert Avenue  San Francisco, CA  94124.

32.   Defendant Tim Larsen  is located at 1815 Egbert Avenue  San Francisco, CA 94124.

33.   Barbara Smith is located at 1815 Egbert Avenue  San Francisco, CA  94124.

34.   Amos Cleophius Brown is located at 1399 McAllister Street San Francisco, CA 94115

35.   Defendant Melina Whitehead is located at at HUD Region IX Office  600 Harrison Street 3rd Floor, San Francisco, CA 94107.

36.   Defendant Gerard Windt is located at at HUD Region IX Office  600 Harrison Street 3rd Floor, San Francisco, CA 94107.

37.   Defendant Diana Farsi is located at at HUD Region IX Office  600 Harrison Street 3rd Floor, San Francisco, CA 94107.

38.   Defendant Bryan Smith is located at at HUD Region IX Office  600 Harrison Street 3rd Floor, San Francisco, CA 94107.

39.   Defendant General Counsel Helen R. Kanosky is located at HUD Office 451 - 7th Street, S.W., Washington, DC 20410.

40.   Defendant Secretary Shaun Donovan is located at HUD Office 451 - 7th Street, S.W., Washington, DC 20410.

## IV.  STATEMENT OF FACTS

41.   On July 25, 2012 Plaintiff Gavin was found unconscious by her son (Bamidele Hambolu) and taken to the hospital by ambulance.

42.     On July 25, 2012 Plaintiff Gavin was admitted to the hospital for heart palpitations.

43.     On July 25, 2012 Plaintiff Bamidele Hambolu, Gavin, Plaintiff Gavin's Family and assisted animal Sir Daniel were Wrongfully Evicted from their Home by Defendants due to no response from San Francisco Housing Authority regarding "reasonable accommodation" for assistance with utilities for usurious third-party billing for utilities (water, sewer and garbage).

44.     Plaintiffs seek declaratory and injunctive relief, damages and punitive damages against defendants San Francisco Housing Authority and City and County of San Francisco  for contractual fraud of housing assistance contract.

45.     Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family have experienced violations of federal rights under, among others, 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States for Defendants San Francisco Housing Authority denial of services, refusals to provide Plaintiff Gavin with reasonable accommodations in Plaintiff Gavin's Home. ("Defendants San Francisco Housing Authority").

46.     Defendants San Francisco Housing Authority's Wrongful Conduct escalated during Plaintiff Gavin's Lease culminating in a "wrongful eviction" based on different claims of billed utility charges in wrongfully posted three day notices on August 24, 2011 and September 19, 2011 due to Plaintiff Gavin's handicaps that was arbitrary, unreasonable and discriminatory. Id.

47.     The events that occurred between July 9, 2012 and July 25, 2012 relating to Plaintiff Lynn Gavin's eviction have adversely impacted and continue to impact adversely Plaintiff Lynn Gavin's health including numerous visits to the emergency room.

48. Plaintiff Gavin and Plaintiff Gavin's Family are in a protected class of persons who live below the federal poverty line.

49. Plaintiff Gavin is a handicapped person due to Plaintiff Gavin's medical conditions.

50. Plaintiff Gavin's medical conditions substantially limit her major life activities including performing manual tasks, walking, breathing, sleeping and working.

51. Plaintiff Gavin's primary care physician at UCSF Medical Center/UCSF Benioff Children's Hospital Amiesha S. Panchal, M.D. ("Dr. Panchal") described in a July 31, 2012 letter ("Letter") Plaintiff Gavin's medical condition as chronic. See Exhibit Letter, Exhibit 3

52. Plaintiff Gavin has a pet rabbit named Sir Daniel that Dr. Panchal stated in the letter helps Plaintiff Gavin greatly with a chronic medical condition. See Exhibit 1

53. Dr. Panchal requested in the Letter that Sir Daniel be designated as a service animal. See Exhibit 1

54. Plaintiff Gavin is qualified as a handicapped person to receive Section 8 housing assistance federal program funds "Section 8" a.k.a Housing Choice Voucher ("HVC") and housing services from Defendants SFHA free from discrimination from Defendants SFHA or from any other source based on Plaintiff Gavin's handicaps or medical conditions.

55. Defendants San Francisco Housing Authority ("SFHA") receive funds from HUD for the HVC program.

56. Defendants SFHA retaliated against Plaintiff Gavin for exercising her First Amendment rights by contacting HUD which subsequent contributed to the wrongful eviction of Plaintiff Gavin from her Home.

57.     Defendants SFHA have continues after Defendants SFHA wrongful eviction of

Plaintiff Gavin from her Home on July 25, 2012 to discriminate impermissibly against Plaintiff

Gavin on the basis of Plaintiff Gavin's handicaps to the present and continuing.

58.     Plaintiff Gavin's medical condition requires Plaintiff Gavin to live in a walkable

community without hills to receive health benefits that a walkable community without hills

affords Plaintiff Gavin.

59.     Plaintiff Gavin's Home is situated in a walkable community.

60.     Plaintiff Gavin enjoyed access to public transportation while living in her Home.

61.     Plaintiff Gavin's health benefited from living in her Home.

62.     Plaintiff Gavin's medical condition requires Plaintiff Gavin to use a machine that

helps Plaintiff Gavin breathe.

63.     Plaintiff Gavin's medical condition requires Plaintiff Gavin to use durable

medical equipment such as; a wheelchair, walker and cane as needed to ease pain.

64.     Plaintiff Gavin's medical condition compelled Plaintiff Gavin to request from

Defendants SFHA during the term of the Lease the for "reasonable accommodation" for

assistance with utilities in accordance to 24 C.F.R. 982.517 (2) (e)18

65.     Plaintiff Gavin alleges Defendants SFHA impermissibly discriminated and

continues to discriminate impermissibly against Plaintiff Gavin request for "reasonable

accommodation."

---

18 24 C.F.R. 982.517 (2) (e): (2) At reexamination, the PHA must use the PHA current utility allowance
schedule.
(e) Higher utility allowance as reasonable accommodation for a person with disabilities.On request from a family
that includes a person with disabilities, the PHA **must** approve a utility allowance which is higher than the
applicable amount on the utility allowance schedule if a higher utility allowance is needed as a reasonable
accommodation in accordance with 24 CFR part 8 to make the program accessible to and usable by the family
member with a disability.

66.    Plaintiff Gavin's medical condition compelled Plaintiff Gavin to request from Defendants SFHA as Plaintiff Gavin would have to incur some cost for physical therapy.

67.    Defendants SFHA did not respond to Plaintiff Lynn Gavin's request for "reasonable accommodations" in accordance to C.F.R. 100.204[19].

68.    No meters exist around Defendant Gavin's Home to measure water use for each residence.

69.    A formula to measure water use for Defendant Gavin's Home does not exists in Defendant Gavin's Lease that the Lease does not explain very well. See Exhibit 2 Lease

70.    Plaintiff Gavin's usurious third-party utility fees are a violation of the HCV contract with SFHA.

71.    Plaintiff Gavin alleges in Plaintiff Gavin's opinion that Plaintiff Gavin was over billed for utilities and wrongfully evicted Plaintiff Gavin from Plaintiff Gavin's Home in retaliation for Plaintiff Gavin asserting her tenant rights in contacting HUD officials. See HUD Region IX Letter Exhibits 4, 5, and 6

72.    Instead of providing Plaintiff Gavin with meaningful access to and reasonable accommodations in Plaintiff Gavin's Home as Plaintiff Gavin requested, Defendants SFHA chose to be complicit in the evict "wrongfully" Plaintiff Gavin denying her Section 8 benefits based on Defendants SFHA claim that Plaintiff Gavin violated her lease agreement differing amounts of money for unpaid water use ("Wrongful Eviction").

---

[19]C.F.R. 100.204 (a): It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

73.     Plaintiff Gavin's August 24, 2011 unsigned three day notice to perform covenant or quit that Plaintiff Gavin owes $1,586.72 in billed utility charges and a lesser amount of billed utility charges in the amount of $1121.92 in the second signed September 19, 2011 three day notice to quit ("Wrongful Three Day Notices") were in violation of HUD regulations in accordance to 24 C.F.R.247 (a)(3) HUD Handbook 4350 § 8-13 (b)(2)(c)(3)20.

74.     Plaintiff Gavin's attorney Nathanael Player in the unlawful detainer case San Francisco Superior Court did not file a cross-complaint.

75.     Plaintiff Attorney Nathanael Player did not address ADA violations of Plaintiff Gavin.

76.     Defendant Attorney Nathanael Player did not address ADA violations of Plaintiff Gavin.

77.     Defendant Attorney Nathanael Player did not address First Amendment rights of Plaintiff Gavin.

78.     Defendant Attorney Nathanael Player did not address Fourteenth Amendment rights of Plaintiff Gavin.

79.     Defendants SFHA "wrongful" termination of Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family from the Housing Choice Voucher ("HCV") in violation of Plaintiffs Fourteenth Amendment rights to an informal hearing.

80.     Defendant Nicole Dickerson-McCray did not respond to Plaintiff Gavin's request for a copy of her "HCV" file to prepare an adequate defense regarding the unlawful detainer is a violation of Plaintiff Gavin's Fourteenth Amendment right.

_____

20 24 C.F.R.247 (a)(3) HUD Handbook 4350 § 8-13 (b)(2)(c)(3) Tenant has a right to informal hearing and termination notice must include enough information to provide tenant with adequate defense in court.

81. Plaintiff Gavin alleges Defendants SFHA have caused Plaintiff Gavin to endure painful medical and physical difficulties that resulted in and continue to result in "cruel and unusual punishment" is a violation of Plaintiff Gavin's in accordance to the U.S. Constitution Eighth Amendment21.

82. Plaintiff Gavin asserts that Defendants SFHA retaliated against Plaintiff Gavin, Plaintiff Gavin's Family and assisted animal for asserting her rights enumerated in the U.S. Constitution in accordance to Cal.Civ.Code 1942.5 (a).

83. Plaintiff Gavin asserts that Defendants SFHA "wrongfully" initiated eviction against Plaintiff Gavin by not responding to Plaintiff Gavin's letters and "wrongfully" terminated from the "HCV" program to harass Plaintiff Gavin in retaliation, among other things, for Plaintiff Gavin requesting asserting Constitutional rights.

84. Plaintiff Gavin asserts that the unlawful detainer action against Plaintiff Gavin fraudulently claiming that Plaintiff Gavin owed utility fees as stated in the Wrongful Three Day Notices in violation to Plaintiff Gavin's rights in accordance to 24 C.F.R. §247.4(c).22

85. Plaintiff Gavin is legally disabled as Plaintiff Gavin's doctor has diagnosed Plaintiff Gavin's disabilities and the United States Social Security Administration has determined that Plaintiff Gavin is disabled.

86. Plaintiff Gavin seeks, *inter alia*, declaratory relief, to enjoin Wrongful Eviction, specific performance of the "HCV" Lease if the Lease is found valid, to recover from

---

21U.S. Cont. Eighth Amendment: Excessive bail shall not be required,nor excessive fines imposedk nor crule and unusual punishments inflicted.

2224 C.F.R. §247.4(c) Time of service: When the termination of the tenancy is based on other good cause pursuant to § 247.3(a)(4), the termination notice shall be effective, and the termination notice shall so state, at the end of a term and in accordance with the termination provisions of the rental agreement, but in no case earlier than 30 days after receipt of the tenant of the notice. Where the termination notice is based on material noncompliance with the rental agreement or material failure to carry out obligations under a state landlord and tenant act pursuant to § 247.3(a)(1) or (2), the time of service shall be in accord with the rental agreement and state law.

fraud and negligence, to redress Defendants SFHA infringement upon Plaintiff Gavin's

Constitutional rights and an accounting.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Declaratory Relief)

87.     On January 27, 2012, the U.S. Department of Housing and Urban Development

("HUD") wrote a letter dated January 27, 2012 in response to the letter Plaintiff Gavin sent to the

Army Inspector General regarding the legality of the AUM utility billing.

88.     On January 27, 2012 the letter written by HUD employee Ms. Melinda Whitehead a

copy was sent to Executive Director Henry Alvarez.  See Exhibit 4

89.     Defendant Melina Whitehead did not conduct an investigation into their referral

by the Army Office of Inspector General regarding the usurious utility fees.

90.     Defendant Melina Whitehead is responding to Plaintiff Gavin's inquiry on behalf

of disabled veterans.

91.     Defendant General Counsel Helen R. Kanosky did not respond to any of

the letters regarding the Three Day Notices regarding utilities.

92.     On May 15, 2012 Plaintiff Gavin faxed a letter to HUD Secretary Shaun

Donovan.

93.     On May 22 2012 in a letter from Regional Administrator Ophelia B.

Basgal referring to Plaintiff Gavin's letter faxed to Secretary Donovan's states Plaintiff Gavin's

complaint will be assigned to an investigator.

94. On May 22 2012 in a letter from Regional Administrator Ophelia B. Basgal referring to Plaintiff Gavin's letter faxed to Secretary Donovan's states Plaintiff Gavin's complaint will be assigned to an investigator.

95. On July 2, 2012, Plaintiff Gavin counsel could not represent Plaintiff Gavin at trial in San Francisco Superior Court ("SFSC") unlawful detainer case ("Case") due to a conflict of interest so Plaintiff Gavin, unfamiliar with the rules of court, attended court arbitration at SFSC on July 2, 2012 without counsel ("Arbitration").

96. On July 2, 2012 Plaintiff Gavin was having heart palpitations.

97. On July 2, 2012 Arbitration lasted two hours.

98. The arbitrator at Arbitration told Plaintiff Gavin that the case wold be heard on the next day on July 3, 2012.

99. No one told Plaintiff Gavin in the afternoon on July 2, 2012.

100. On July 2, 2012, the SFSC entered a default judgment in Plaintiff Gavin's case.

101. On July 4, 2012 the SFSC was closed due to the holiday.

102. On July 5, 2012, the SFSC's Access self-help center ("Access") provided Plaintiff Gavin with paperwork for an ex parte application and motion to vacate judgment and to return to Access if Plaintiff Gavin had any questions.

103. On July 6, 2012, SFSC's Access was closed and Plaintiff Gavin did not know where to obtain any assistance.

104. Om July 9, 2012 Plaintiff Gavin attempted to submit at SFSC an ex parte application but the SFSC clerk instructed Plaintiff Gavin that the documents were incorrect.

105. On July 10, 2012, Plaintiff Gavin filed at SFSC an exparte application to be heard on Thursday, July 12, 2012.

106. On July 10, 2012 Plaintiff Gavin received verification from the San Francisco Plaintiff Gavin received verification form the San Francisco Human /rights Commission ("SFHC") that Plaintiff Gavin had an open complaint against property owners Parkmerced. See Exhibit 6

107. On or about July 11, 2012 Plaintiff Gavin received a letter dated July 11, 2012 from the Attorney Nathanael Player Plaintiff Gavin's utility fees among other things overcharged Plaintiff Gavin on Plaintiff Gavin's utility bills.

108. On July 12, 2012, a neighbor drove Plaintiff Gavin to SFSC but the stress of everything caused Plaintiff Gavin to leave the court papers at home and SFSC Judge Ronald E. Quidachay told Plaintiff Gavin to return the next day Friday, July 13, 2012.

109. On July 13, 2012, Plaintiff Gavin asked at San Francisco Superior Court for a clerk supervisor and Ms. Gonzalez approached Plaintiff Gavin at the SFSC window; Plaintiff Gavin was running late to the courtroom due to a problem with the underground trains and asked Ms. Gonzalez for "reasonable accommodation" and assistance; Ms. Gonzalez stated to Plaintiff Gavin that the proper request had to be a 5 day notice in advance; Plaintiff Gavin explained to Ms. Gonzalez that Plaintiff Gavin was trying to get to SFSC Department 501; Ms. Gonzalez then called SFSC Department 501; Plaintiff Gavin went to SFSC Department 501; on the fifth floor of SFSC but Judge Quidachay told Plaintiff Gavin to get out! Learn to be on time. Plaintiff Gavin has a chronic medical condition and a physical disability that requires Plaintiff Gavin to use durable medical equipment such as; a wheelchair, cane and walker.

110. Plaintiff returned downstairs and asked to speak with Ms. Gonzalez's supervisor and explained what has transpired in Department 501 was finished with ex parte orders for the

day since is was noon and there was not enough time to give a 25 hour notice for an ex parte application and to come back next week.

111. On July 17, 2012, Judge Quidachay stated to Plaintiff Gavin that Judge Quidachay would not set aside the default judgment in Plaintiff Gavin's case nor would he grant anew trial but that he would only give Plaintiff Gavin one stay for a week that expired on July 25, 2012.

112. Judge Quidachy's "erred" is in violation of Plaintiff Gavin's Fourteenth Amendment Constitutional rights "Due Process"

113. Judge Quidachy's "erred" is in violation of Plaintiff Gavin's Fourteenth Amendment Constitutional rights "Equal Protection" and violation of HUD Handbook 4350 § 8-13 (b)(2)(c)(3).23

114. Judge Quidachy's "erred" is in violation of Plaintiff Gavin's rights under 42 U.S.C. A. § 1437f(d)(1)(B) federal regulations are mandatory as they set guidelines for evictions.

115. On July 25, 2012, the San Francisco Sheriff wrongfully evicted Plaintiff Gavin from Plaintiff Gavin's Home.

116. On July 25, 2012, Plaintiff Gavin collapsed twice, was hospitalized and required heart monitoring by Plaintiff Gavin's physician.

117. Subsequent to the Wrongful Eviction, Parkmerced removed from Plaintiff Bamidele Hambolu's Plaintiff Gavin's Property based on Plaintiff Gavin's information and belief.

118. Defendants Parkmerced did not provide Plaintiff Gavin with any message or to Plaintiff Gavin's e-mail that Plaintiff Gavin provided in the Lease regarding taking possession of Plaintiff Gavin's Property.

---

23 42 U.S.C. A. § 1437f(d)(1)(B) "federal regulations are mandatory as they set eviction guidelines" and state laws.

119.  Plaintiff Gavin is legally entitled to impartial[24] treatment from every source free from discrimination due to Plaintiff Gavin's handicaps or any other reason according to the law that has not occurred according to the facts of this case. See also 2224[25]; Warren v. Merrill (2006) 143 Cal.App.4th 96, 112-113[26]; Cal.App.2d 294, 299[27];Padilla v. Yoo, D.J.D.A.R. 5724,

---

[24] Black's Law Dictionary defines impartial as "adj. (16c) Unbiased; disinterested." Black's Law Dictionary (2009) 9th edition, Bryan A. Garner editor-in-chief. "These things also belong to the wise: it is not good to show partiality in judgment." Proverb 24:23.

[25] CA Civil Code "§ 2224. Wrongful act One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

[26] "What Merrill's arguments overlook are the following principles of law: Once fraud by a fiduciary is shown by the evidence (1) a written contract for a real property transaction is not required; (2) the absence of a written contract does not violate the statute of frauds; (3) the defrauded person may be found to hold superior title to that held by the defrauder; and (4) a wide variety of equitable remedies are available and appropriate to remedy the fiduciary's fraud. Many of these principles were explained by the Supreme Court in Mazzera v. Wolf.[15] 'A constructive trust may be imposed when a party has acquired property to which he is not justly entitled, if it was obtained by actual fraud, mistake or the like, or by constructive fraud through violation of some fiduciary or confidential relationship. [Citations.] Such a trust, imposed upon a partner, agent, or other fiduciary, arises by operation of law, and, accordingly, the statute of frauds is no bar. [Citations.] But the mere failure to perform an oral promise to convey real property is not itself fraud, and the agreement  will be held unenforceable under the statute of frauds in the absence of actual or constructive fraud. [Citations.]'[16]." Warren v. Merrill (2006) 143 Cal.App.4th 96, 112-113.

[27] "Having breached the promise which formed the only consideration for assignment of the second trust deed to him, and having paid no money for it, defendant had only nominal title thereto. However, he represented to Title Insurance and Trust Company that he was the owner of that second lien and entitled to receive the surplus. . . . Clearly a constructive  trust arose in favor of plaintiff pursuant to section 2224, Civil Code, . . . ." Roberts v. Salot (1958) 166 Cal.App.2d 294, 299.

312[28]; In re Guantanamo Bay Detainee Litigation, 581 F.Supp.2d 33, 42[29] (D.D.C. 2008); In re

Xe Services Alien Tort Litigation, 665 F.Supp.2d 569, 589[30] (E.D.Va. 2009); In re Asbestos

Litigation, 134 F.3d 668, 680[31] (5th Cir. 1998).

## SECOND CAUSE OF ACTION
(Injunctive Relief)

120.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

121.    On or about March 1, 2010, Plaintiff Gavin suffered the Stove Injury.

122.    No one in Plaintiff Gavin's family has violated the Rules.

123.    Defendants SFHA Authority violated the Public Housing Authority (PHA) Rules.

---

[28] "The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. 'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL. (Day v. A T & T Corp. (1998) 63 Cal.App.4th 325, 332 [74 Cal.Rptr.2d 55]; see State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1105 [53 Cal.Rptr.2d 229].) This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices. (Fletcher v. Security Pacific National Bank (1979) 23 Cal.3d 442, 453 [153 Cal.Rptr. 28, 591 P.2d 51].)" In re Tobacco II Cases (2009) 46 Cal.4th 298, 312.

[29] "These qualifications are important—indeed essential—to preserving habeas corpus, 'an indispensable mechanism for monitoring the separation of powers.' Boumediene, 128 S.Ct. at 2259. The judicial authority to issue a writ of habeas corpus is derived from the guiding principle that 'personal liBernardy [] is secured by adherence to separation of powers.'[5] Id. at 2277. And the court's authority to safeguard an individual's liBernardy from unbridled executive fiat reaches its zenith when the Executive brings an individual involuntarily within the court's jurisdiction, detains that individual and then subverts diplomatic efforts to secure alternative channels for release. See St. Cyr, 533 U.S. at 301, 121 S.Ct. 2271 (stating that the protections afforded by habeas review are at their strongest in reviewing the legality of executive detention). LiBernardy finds its liberator in the great writ, and the great writ, in turn finds protection under the Constitution. Wingo v. Wedding, 418 U.S. 461, 468, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974) (recognizing that 'the great constitutional privilege' of habeas corpus has historically provided a prompt and efficacious remedy for whatever society deems to be intolerable restraints' (internal citation omitted))." In re Guantanamo Bay Detainee Litigation, 581 F.Supp.2d 33, 42 (D.D.C. 2008).

[30] "The Supreme Court recently declared that threshold dismissal for failure to state a valid claim must be granted unless the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))." In re Xe Services Alien Tort Litigation, 665 F.Supp.2d 569, 589.

[31] "The Amchem class was rejected also, in part, because common questions of law or fact did not predominate over questions affecting only individual class members. See id. at —, 117 S/ Ct. at 2249 (citing rule 23(b)(3))." In re Asbestos Litigation, 134 F.3d 667, 680 (5th Cir. 1998).

124. Defendants SFHA accepted HUD's money for multiple projects in addition to subsidized housing.

125. Plaintiff Gavin's medical condition compelled Plaintiff Gavin to make the "reasonable accommodation' request Defendants SFHA that Defendants SFHA denied.

126. On September 1, 2011, Plaintiff Gavin paid the September 1, 2011 Rent Payment.

127. On September 19, 2011, Plaintiff Gavin received the September 19, 2011 Notice.

128. On October 3, 2011, Plaintiff Gavin paid rent for her Home with an installment payment of $50 for payments in arrears.

129. On October 19, 2011, Plaintiff Gavin's rent was returned the citing Plaintiff Gavin's "current legal status."

130. On January 27, 2012, HUD wrote the January 27, 2012 HUD Letter.

131. On May 15, 2012, Plaintiff Gavin faxed a letter to HUD Secretary Donovan.

132. On May 22, 2012, Plaintiff Gavin received the May 22, 2012 HUD Regional Administrator letter. See Exhibit 5

133. On or about May 23, 2012, Plaintiff Gavin obtained the May 23, 2012 Resident Ledger.

134. On July 2, 2012, Plaintiff Gavin's counsel could not represent Plaintiff Gavin at trial in Plaintiff Gavin's Case so Plaintiff Gavin, unfamiliar with the rules of court, attended the Arbitration without counsel.

135. The Arbitration lasted two hours.

136. The arbitrator at Arbitration told Plaintiff Gavin that the Case would be heard the next day on July 3, 2012.

137. No one ever told Plaintiff Gavin that the Case would proceed to trial later the morning of July 2, 2012.

138. Plaintiff Gavin experienced heart palpitations due to extreme stress of the Arbitration and Case.

139. On July 2, 2012, the SFSC entered a default judgment in Plaintiff Gavin's Case.

140. On July 4, 2012, the SFSC was closed due to the holiday.

141. On July 5, 2012, Access provided Plaintiff Gavin with paperwork for an ex parte application and motion to vacate judgment and to return to Access if Plaintiff Gavin had any questions.

141. On July 6, 2012, Access was closed and Plaintiff Gavin did not know where to go to obtain any assistance.

142. On July 9, 2012, Plaintiff Gavin attempted to submit at SFSC an ex parte application but the SFSC clerk instructed Plaintiff Gavin that the documents were incorrect.

143. On July 10, 2012, Plaintiff Gavin filed at SFSC an ex parte application to be heard on Thursday, July 12, 2012.

144. On July 10, 2012, Plaintiff Gavin received verification from SFHRC that Plaintiff Gavin has an open complaint for ADA and housing discrimination.

145. On or about July 11, 2012, Plaintiff Gavin received the July 11, 2012 a letter from Attorney Nathanael Player.

146. On July 12, 2012, a neighbor drove Plaintiff Gavin to SFSC and Judge Quidachay told Plaintiff Gavin to return the next day, Friday, July 13, 2012.

147. On July 13, 2012, Plaintiff Gavin endured the Wrongful Delay.

148.    On July 16, 2012, SFSC clerks were on strike so Plaintiff Gavin left Plaintiff Gavin's ex parte application in the box in SFSC available for claims.

149.    On July 17, 2012, Judge Quidachay stated to Plaintiff Gavin the Wrongful Ruling that violated Plaintiff Gavin's right to a jury trial.

150.    On July 18, 2012, Plaintiff Gavin wrote the July 18, 2012 SFSC Letter.

151.    On July 19, 2012, Plaintiff Gavin visited federal court to inquire about filing a claim.

152.    On July 23, 2012, Plaintiff Gavin filed the Complaint.

153.    On July 23, 2012 Plaintiff Gavin had heart palpitations.

154.    On July 25, 2012, the San Francisco Sheriff evicted Plaintiff Gavin from Plaintiff Gavin's Home.

155.    On July 25, 2012, Plaintiff Gavin collapsed twice, was hospitalized and required heart monitoring.

156.    Property owner Parkmerced recently removed from Plaintiff Gavin's Home Plaintiff Gavin's Property.

157.    The amounts and information on the Wrongful Three Day Notices are "inconsistent". See Exhibit 3

158.    Plaintiff Gavin has therefore not breached the Lease according to the Wrongful Three Day Notices.

159.    Plaintiffs Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family property have seized by property owners due to Defendants SFHA's Wrongful Conduct.

160.    Plaintiff Gavin seeks a judicial determination and declaration of Plaintiff Gavin

and Defendants SFHA' s respective rights and duties that is appropriate at this time to prevent

any further harm to Plaintiff Gavin and reinstatement into the "HCV" program.

161.    The law guarantees Plaintiff Gavin the right of a full and fair hearing concerning

any harm Defendants SFHA may have caused Plaintiff Gavin in accordance to 24 C.F.R.247

(a)(3) HUD Handbook 4350 § 8-13 (b)(2)(c)(3)32

162.    Plaintiff Gavin has incurred fees and other court costs according to

proof.

**THIRD CAUSE OF ACTION**
(Conspiracy To Commit Fraud [Cal. Civ. Codes §§ 3294(a), 1572 & 1711])

163    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

164.    Plaintiff Gavin alleges Defendant Executive Director of Section 8, Nicole

Dickerson-McCray  Wrongful Conduct conspired to committed fraud against Plaintiff Gavin

thereby nullifying the Wrongful Conduct including Plaintiff's Lease and, *a fortiori*, all Wrongful

Conduct subsequent to the alleged formation of Plaintiff's Lease as void *ab initio*.[33]

165.    Plaintiff Gavin alleges Defendant Nicole Dickerson-McCray Executive Director

of Section 8 a.k.a Housing Choice Voucher ("HCV") Program violated Plaintiff Gavin's rights in

---

[32] 24 C.F.R.247 (a)(3) HUD Handbook 4350 § 8-13 (b)(2)(c)(3) Tenant has a right to informal hearing and termination notice must include enough information to provide tenant with adequate defense in court.

[33] Cal. Bus. & Prof. Code § 17200; CA Civil Code § 1709; Cal. Evid. Code § 669; Cal. Pen. Code § 496; 15 U.S.C. § 1601; 18 U.S.C. §§ 1961-1968; 42 U.S.C. § 1983; Macias v. Excel Bldg. Services LLC, 767 F.Supp.2d 1002, 1012 (N.D.Cal. 2011); The MEGA Life & Health Ins. Co. v. Superior Court (2009) 172 Cal.App.4th 1522, 1530; Melendrez v. D & I Investment, Inc. (2005) 127 Cal.App.4th 1238, 1256; Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1075 (" 'Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful.  Nor do courts have any such power under their inherent limited authority to reform contracts. [Citations.]' (*Armendariz, supra*, 24 Cal.4th at pp. 124-125.)"); 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1286-1287; Sierra-Bay Fed. Land  Bank Assn. v. Superior Court (1991) 227 Cal.App.3d 318, 330-331; Trout v. Taylor (1934) 220 Cal.App. 652, 656 (" 'In view of these authorities the conclusion is inescapable that the deed in question time not voidable but was void *in toto*, a nullity ").

accordance to Cal.Civ.Code 1572 (3)34 in the termination of Plaintiff Gavin and Plaintiff Gavin's Family from the ("HCV") program.  "FRAUD"

166.    Plaintiff Gavin alleges Defendant Nicole Dickerson-McCray was deceitful in accordance to Cal. Civ. Codes §170935 in not responding to Plaintiff Gavin's letters. "FRAUD"

167.    Plaintiff Gavin allege Defendant Henry Alvarez III was deceitful in accordance to Cal. Civ. Codes §171036 regarding Public Housing Rules in accordance to HUD regulations and committed fraud. "FRAUD"

168.    Plaintiff Gavin allege Defendant Barbara Smith was deceitful in accordance to Cal. Civ. Codes §1710 regarding Public Housing Rules in accordance to HUD regulations and committed fraud. "FRAUD"

169.    Plaintiff Gavin allege Defendant Tim Larsen was deceitful in accordance to Cal. Civ. Codes §1710 regarding Public Housing Rules in accordance to HUD regulations and committed fraud. "FRAUD"

168.    Plaintiff Gavin allege Amos Brown was deceitful in accordance to Cal. Civ. Codes §1710 regarding Public Housing Rules in accordance to HUD regulations and committed fraud. "FRAUD"

169.    Plaintiff Gavin allege Defendant Nathanael Player was deceitful in accordance to Cal. Civ. Codes §1710 regarding Public Housing Rules in accordance to HUD regulations and committed fraud. "FRAUD"

---

34Cal.Civ.Code 1572 (3): The suppression of that which is true, by one having knowledge or belief of the fact.
35Cal. Civ. Code §1709 One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers..
36Cal. Civ. Code §1710 (1): The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
(2): The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3): The suppression of a fact, by one who is bound to disclose it, or who give information of other facts which are likely to mislead for want of communication of that fact or (4): A promise, made without any intention of performing it.

170.    Plaintiff Gavin alleges that the City and County of San Francisco in accordance to Cal. Civ. Codes §1710(3)37;§171138; 1940.6(a)(1)(A)(B)(C)(D)(2)(b)39 and 24 C.F.R. 24 C.F.R. §982.45340 committed fraud with the nondisclosure of a public private partnership with a Parkmerced that would demolish homes rented by subsidized tenants. "FRAUD"

### FOURTH CAUSE OF ACTION
(Fraud Cal. Civ. Codes §§1709, 1710, 1711, 1572)

171.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

172.    Plaintiff Gavin alleges Defendants SFHA Commissioners did not respond to

Plaintiff Gavin's request for HUD Guidelines manual regarding possible fraudulently notices,

inter alia, Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and

September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution;

California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; 42 U.S.C. §§ 1983, 1985;

CA Civil Codes §1709, §1572 and §1573.

---

37Cal. Civ. Code §1710(3) Deceit: 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact;

38Cal. Civ. Code §1711: One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit.

39Cal. Civ. Code 1940.6(a)(1)(A)(B)(C)(D)(2)(b) Demolition: (a) The owner of a residential dwelling unit or the owner's agent who applies to any public agency for a permit to demolish that residential dwelling unit shall give written notice of that fact to:
(1) A prospective tenant prior to the occurrence of any of the
following actions by the owner or the owner's agent:
(A) Entering into a rental agreement with a prospective tenant.

4024 C.F.R.§982.453(a)(1)(2)(3) HAP Contract: 24 C.F.R.§982.453(a)(1)(2)(3) HAP Contract– Owner Breach of Contract
(a) any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:
(1) If the owner has violated any obligation under the HAP contract for the dwelling unit, including the owner's obligation to maintain the unit in accordance with the HQS.
(2) If the owner has violated any obligation under any other HAP contract under Section 8 of the 1937 Act (42 U.S.C. §1437f)
(3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any federal housing program.

173.    Plaintiff Gavin alleges Henry Alvarez Plaintiff did not respond to Plaintiff Gavin's request for HUD Guidelines manual regarding possible fraudulently notices, inter alia, Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; 42 U.S.C. §§ 1983, 1985; CA Civil Codes §1709, §1572 and §1573.

174.    Plaintiff Gavin alleges Nicole Dickerson-McCray did not respond to Plaintiff Gavin's request for HUD Guidelines manual regarding possible fraudulently notices, inter alia, Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; 42 U.S.C. §§ 1983, 1985; CA Civil Codes §1709, §1572 and §1573.

175.    Plaintiff Gavin alleges Defendant Regional Administrator Ophelia B. Basgal non investigation into the 197 Three Day Notices for usurious utility billing inter alia, Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; and 42 U.S.C. §§ 1983, 1985.

176.    Plaintiff Gavin alleges Diana D. Farsai non investigation into the 197 Three Day Notices for usurious utility billing inter alia, Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; and 42 U.S.C. §§ 1983, 1985.

177.    Plaintiff Gavin alleges General Eric Shinseki non investigation into the 197 Three Day Notices for usurious utility billing inter alia, as they pertained to the Veteran Assisted Supportive Housing ("VASH") Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; and 42 U.S.C. §§ 1983, 1985.

178.    Plaintiff Gavin alleges HUD Secretary Shaun Donovan non investigation into the 197 Three Day Notices for usurious utility billing inter alia, Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; and 42 U.S.C. §§ 1983, 1985.

179.    Plaintiff Gavin alleges General Counsel Helen R. Kanosky non investigation into the 197 Three Day Notices for usurious utility billing inter alia, Three Day Notices of Plaintiff (Gavin's) Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm under the United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; and 42 U.S.C. §§ 1983, 1985.

180.    Plaintiff Gavin alleges the utility charges were not equitably apportion for charges to each apartment or building. "FRAUD"

181.    Plaintiff Gavin alleges the lease must contain a provision that upon the tenant's request, the landlord must provide a copy of the actual utility bill for the tenant to have the opportunity to contest the bill. "FRAUD"

182.    Plaintiff Gavin alleges San Francisco Housing Authority allowed Plaintiff Gavin to enter into a fraudulent lease that violated HUD regulations that led to constructive eviction.


# FIFTH CAUSE OF ACTION
(Negligence)

183.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

184.    Plaintiff Gavin alleges Defendant ADA Coordinator Barbara Smith did not respond to Plaintiff Gavin's letter request for "reasonable accommodation" in accordance to 24 C.F.R § 100.204 (a).41   and is "NEGLIGENT"

---

41 24 C.F.R. 100.204 (a) It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

185. Plaintiff Gavin allege Defendant Executive Director Section 8 Nicole Dickerson-Dicerkersonis negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)42Act), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794.

186. Plaintiff Gavin alleges Tim Larsen Esq., San Francisco Housing Authority legal counsel is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)43Act), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

187. Plaintiff Gavin alleges Roger Crawford Esq., San Francisco Housing Authority legal counsel is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)44Act), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

---

42 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
    3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
        (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
43 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
    3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
        (ii) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
44 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
    3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
        (iii) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

188. Plaintiff Gavin alleges Defendant Bill Ford Esq., legal counsel is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)45Act), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

189. Plaintiff Gavin allege Defendant Executive Henry Alvarez is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)46Act), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

190. Plaintiff Gavin alleges Defendant General Eric Shinseki is negligent for not responding Plaintiff Gavin's letter pertaining to VASH for disabled veterans FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)47Act), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

---

45 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
   3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
     (iv) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
46 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
   3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
     (v) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
47 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
   3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
     (vi) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

VERIFIED COMPLAINT - 33

191.    Plaintiff Gavin alleges Defendant Secretary of HUD Shaun Donovan is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)48Act), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

203.    Plaintiff Gavin alleges Defendant HUD General Counsel Helen R. Kanosky is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i)49, Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

192.    Plaintiff Gavin alleges Defendant HUD Regional Administrator Ophelia Basgal is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C)(i), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

193.    Plaintiff Gavin alleges Defendant Diana D. Farsai is negligent for denying Plaintiff Gavin's FAIR Housing Act Amendment (FHAA), 42 U.S.C. § 3604 (f)(3)(B)(C), Cal. Civ. Code § 54.1 (addressing accommodations), federal funded housing ADA Section 504. and 29 U.S.C. § 794. ("NEGLIGENT")

### SIXTH CAUSE OF ACTION
(Breach of Contract Cal. Civ. Code §337(3))

---

48 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
   3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
   (vii)the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
49 42 U.S.C. § 3604 3(f)(B)(C)(i) Fair Housing Act Amendment:
   3(f)(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or (C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—
   (viii)    the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

194.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

195.    Plaintiff Gavin alleges Defendant San Francisco Housing Authority mailed the termination notice after Plaintiff Bamidele Hambolu, Plaintiff Gavin, Plaintiff Gavin's Family and assisted animal were evicted and is a breached the ("HCV") contract in accordance to 24 C.F.R. § 982.453[50,] 42 U.S.C. A. § 1437f(d)(1)(B) *federal regulations are mandatory as they set guidelines for evictions* and in accordance to 24 C.F.R. 247 (a)(2), HUD handbook 4350.3, "*landlord action must state enough specificity so as to enable the tenant to prepare a defense.* See also <u>Anderson v. Denny,</u> 365 F. Supp. 1254, 1260 (W.D. Va. 1973); see also <u>Calder v. Durham Housing Authority,</u> 433 F. 2d 998 (4th Cir. 1970), (each determining due process requirements after finding that public housing tenancy is a property right protected by due process). "DUE PROCESS"

196.    Plaintiff Gavin alleges Defendant Executive Director Nicole Dickerson-McCray mailed the termination notice after Plaintiff Bamidele Hambolu, Plaintiff Gavin, Plaintiff Gavin's Family and assisted animal were evicted and is a breached the ("HCV") contract in accordance to 24 C.F.R. § 982.453· 42 U.S.C. A. § 1437f(d)(1)(B) *federal regulations are mandatory as they set guidelines for evictions* and in accordance to 24 C.F.R. 247 (a)(2), HUD handbook 4350.3, "*landlord action must state enough specificity so as to enable the tenant to prepare a defense.* See also <u>Anderson v. Denny,</u> 365 F. Supp. 1254, 1260 (W.D. Va. 1973); see also <u>Calder v. Durham Housing Authority,</u> 433 F. 2d 998 (4th Cir. 1970), (each determining due process requirements after finding that public housing tenancy is a property right protected by due process). "DUE PROCESS"

---

50 24 C.F.R. § 982.453 Owner Breach of Contract: (a) Any of the following actions by the owner (including a
      principal or other interested party) is a breach of the HAP contract by the owner.
(1) If the owner has violated any obligation under the HAP contract for the dwelling unit, including the owner's
obligation to maintain the unit in accordance with the HQS
(2) If the owner has violated any obligation under any other HAP contract under Section 8 of the 1937 Act (42
U.S.C. 1437f)
(3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any federal
      housing program.

197.     On July 25, 2012 Plaintiff Gavin was found unconscious by her son and was taken to the hospital by ambulance.

198.     On July 25, 2012 Plaintiff Gavin was admitted into the hospital regarding heart palpitations.

199.     On July 25, 2012 Plaintiff Gavin, Plaintiff Gavin's family and assisted animal were evicted from their Home at 22 Grijalva Drive by the San Francisco Sheriff's Department.

200.     Plaintiff Gavin alleges Defendants   constructively breached51 the ("HCV") contract with Plaintiff Gavin and other evicted subsidized tenants with usurious third-party utility billing to terminate subsidized tenants from the ("HCV") program.  "Breach of Contract"

201.     Plaintiff Gavin allege Defendant SFHA discriminates against Plaintiff Bamidele Hambolu and violates Plaintiff Bamidele Hambolu's right to "equal enjoy dwelling of Plaintiff Bamidele Hambolu's Home".

202.     Plaintiff Gavin alleges Defendant SFHA continues to discriminate against Plaintiff Gavin and violates Plaintiff Gavin's right to "equal enjoy dwelling of Plaintiff Gavin's Home".

203.     Plaintiff Gavin alleges Defendant SFHA continues discriminates against Plaintiff Gavin's Family and violates Plaintiff Gavin's Family right to "equal enjoy dwelling of Plaintiff Gavin's  Home".

204.     Plaintiff Gavin alleges Defendant SFHA continues to discriminate against assisted animal Sir Daniel's and violates Plaintiff Sir Daniel's right to "equal enjoy dwelling of Plaintiff Sir Daniel's Home and open space".

205.     Plaintiff Gavin alleges Defendants SFHA continues to  discriminate against Plaintiff Bamidele Hambolu and violates Plaintiff Bamidele Hambolu's rights in accordance to The Civil Rights Act of 186652 Equal Protection."

---

51 Cal. Civ. Code § §1573:  Constructive fraud consists:

  1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

  2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.
52 1866 Civil Rights Act Civil Rights Act of 1866: "An Act to protect all Persons in the United States in their Civil Rights, and furnish the Means of their vindication", the Act declared that people born in the United States and

206.   Plaintiff Gavin alleges Defendants SFHA continues to discriminate against Plaintiff Gavin and violates Plaintiff Gavin's rights in accordance to The Civil Rights Act of 1866 Equal Protection."

207.   Plaintiff Gavin alleges Defendants SFHA continues to discriminate against Plaintiff Gavin's Family and violates Plaintiff Gavin's Family rights in accordance to The Civil Rights Act of 1866 Equal Protection."

208.   Plaintiff Gavin alleges San Francisco Housing Authority violates Plaintiff Bamidele Hambolu rights in accordance to Title VIII of the 196853 Civil Rights Act enacted by President Lyndon B. Johnson that prohibited housing discrimination based on race. "Equal Protection"

209.   Plaintiff Gavin alleges San Francisco Housing Authority violates Plaintiff Gavin rights in accordance to Title VIII of the 1968 Civil Rights Act enacted by President Lyndon B. Johnson that prohibited housing discrimination based on race. "Equal Protection"

210.   Plaintiff Gavin alleges San Francisco Housing Authority violates Plaintiff Gavin's Family rights in accordance to Title VIII of the 1968 Civil Rights Act enacted by President Lyndon B. Johnson that prohibited housing discrimination based on race. "Equal Protection"

---

not subject to any foreign power are entitled to be citizens, without regard to race, color, or previous condition of also said that any citizen has the same right as a white citizen to make and enforce contracts, sue and be sued, give evidence in court, and inherit, purchase, lease, sell, hold, and convey real and personal property. Additionally, the Act guaranteed to all citizens the "full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and ... like punishment, pains, and penalties..." Persons who denied these rights on account of race or previous enslavement were guilty of a misdemeanor and upon conviction faced a fine not exceeding $1,000, or imprisonment not exceeding one year, or both." "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence in court.... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[53]Title VIII of the 1968 Civil Rights Act "Fair Housing":The Civil Rights Act of 1968 prohibited the following forms of discrimination:

1. Refusal to sell or rent a dwelling to any person because of his/her race, color, religion or national origin. People with disabilities and families with children were added to the list of protected classes by the Fair Housing Amendments Act of 1988.

2. Discrimination against a person in the terms, conditions or privilege of the sale or rental of a dwelling.

3. Advertising the sale or rental of a dwelling indicating preference of discrimination based on race, color, religion or national origin (amended by Congress as part of the Housing and Community Development Act of 1974 to include sex, and, as of 1988, people with disabilities and families with children.)

4. Coercing, threatening, intimidating, or interfering with a person's enjoyment or exercise of housing rights based on discriminatory reasons or retaliating against a person or organization that aids or encourages the exercise or enjoyment of fair housing rights.

211. Plaintiff Gavin alleges San Francisco Housing Authority violates Plaintiffs who are subsidized tenants rights in accordance to Title VIII of the 1968 Civil Rights Act enacted by President Lyndon B. Johnson that prohibited housing discrimination based on race. "Equal Protection"

212. Plaintiff Gavin alleges the City and County of San Francisco violates Plaintiff Bamidele Hambolu rights in accordance to Title VIII of the 1968 Civil Rights Act enacted by President Lyndon B. Johnson that prohibited housing discrimination based on race. "Equal Protection"

213. Plaintiff Gavin alleges the City and County of San Francisco violates Plaintiff Gavin rights in accordance to Title VIII of the 1968 Civil Rights Act enacted by President Lyndon B. Johnson that prohibited housing discrimination based on race. "Equal Protection" See also Trafficante v. Metropolitan Life INS 409 U.S. 205 1972.

214. Plaintiff Gavin alleges the City and County of San Francisco violates Plaintiff Gavin's Family rights in accordance to Title VIII of the 1968 Civil Rights Act enacted by President Lyndon B. Johnson that prohibited housing discrimination based on race. "Equal Protection"

215. Plaintiff Gavin alleges San Francisco Housing Authority continues to violate Plaintiff Bamidele Hambolu's rights in accordance to Cal. Civ. Code § 1573 "constructive fraud" in termination from the HUD ("HCV") without ("DUE PROCESS").

216. Plaintiff Gavin alleges San Francisco Housing Authority continues to violate Plaintiff Gavin's rights in accordance to Cal. Civ. Code § 1573 "constructive fraud" in termination from the HUD ("HCV") program without ("DUE PROCESS").

217. Plaintiff Gavin alleges San Francisco Housing Authority continues to violate Plaintiff Gavin's Family rights in accordance to Cal. Civ. Code § 1573 "constructive fraud" in termination from the HUD ("HCV") program without ("DUE PROCESS").

218. Plaintiff Gavin's has a physical impairment mobility disability that substantially limits one or more major life activities such as walking, standing, bending or caring for herself as defined in 42 U.S.C. § 3602(h); Cal. Gov't Code § 12955.3.

## SEVENTH CAUSE OF ACTION
(Intentional Tort CA.Civil.Code 3294(1) & Cal. Civ. Proc § 335.1)

219.    Plaintiff Gavin relleges the above paragraphs as though full set for the herein.

220.    Plaintiff Gavin allege the "wrongful eviction" of Plaintiff Bamidele Hambolu, from his Home by Defendants San Francisco Housing Authority was malicious in accordance to Cal. Civ. Code §3294 (1).54 "INTENTIONAL TORT"

221.    Plaintiff Gavin allege the "wrongful eviction" of Plaintiff Gavin, from her Home by Defendants San Francisco Housing Authority was malicious in accordance to Cal. Civ. Code §3294 (1). "INTENTIONAL TORT"

222.    Plaintiff Gavin allege the "wrongful eviction" of Plaintiff Plaintiff Gavin's Family from their Home by Defendants San Francisco Housing Authority was malicious in accordance to Cal. Civ. Code §3294 (1). "INTENTIONAL TORT"

223.    Plaintiff Gavin allege the "wrongful eviction" of assisted animal Plaintiff Sir Daniel, from his Home by Defendants San Francisco Housing Authority was malicious in accordance to Cal. Civ. Code §3294 (1). "INTENTIONAL TORT"

224.    On July 25, 2012 Plaintiff Gavin was found unconscious by her son Plaintiff Bamidele Hambolu and was taken to the hospital by an ambulance and later admitted into the hospital.

---

54 Cal. Civil. Code 3294 (1)"Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

225.    On July 25, 2012 Plaintiff Gavin, Plaintiff Gavin's family and assisted animal Sir Daniel were "wrongfully evicted" from their Home by San Francisco Sheriffs Department. "INTENTIONAL TORT"

226.    Plaintiff Gavin allege that Defendant San Francisco Housing Authority's action against Plaintiff Bamidele Hambolu, *"Shocks the Conscience"* as the swift and intense force through the exertion of force and power against rights or laws were *"Violent55"* and denied Plaintiff Bamidele Hambolu his Fourteenth Amendment rights. ("DUE PROCESS") and ("EQUAL PROTECTION").

227.    Plaintiff Gavin alleges that Defendant San Francisco Housing Authority's action against Plaintiff Gavin, *"Shocks the Conscience"* as the swift and intense force through the exertion of force and power against rights or laws were *"Violent"* and denied Plaintiff Gavin her Fourteenth Amendment rights. ("DUE PROCESS") and ("EQUAL PROTECTION").

228.    Plaintiff Gavin alleges that Defendant San Francisco Housing Authority's action against Plaintiff Gavin's Family and assisted animal Sir Daniel *"Shocks the Conscience"* as the swift and intense force through the exertion of force and power against rights or laws were *"Violent56"* and denied Plaintiff Gavin's their Fourteenth Amendment rights. ("DUE PROCESS") and ("EQUAL PROTECTION"). See Termination Notices Exhibits 9 and 10

229.    Plaintiff Gavin allege Defendant San Francisco Housing Authority "wrongful termination" of Plaintiff Bamidele Hambolu from his Home with a termination notice mailed after an eviction is a violation of HUD Handbook regulations 4350 § 8-13 (b)(2)(c)(3), "landlord action must state enough specificity so as to enable the tenant to prepare a defense." See also

---

55 Violence: swift and intense force, rough or injurious physical force, action or treatment, an unjust or unwarranted exertion of force and power as against right or laws. A violent act or proceeding.
56 Violence: swift and intense force, rough or injurious physical force, action or treatment, an unjust or unwarranted exertion of force and power as against right or laws. A violent act or proceeding.

Radecki v. Joura, 114 F 3d. 115 (8th Cir.1997). ("INTENTIONAL TORT") See also Green Park Associates v. Inman, 467 N.YS 2d 500, 501 (NY Civ Ct. 1983) landlord must comply with HUD handbook in termination tenancy in HUD subsidized housing, in Thorpe v. Housing Authority of the City of Durham 393 U.S. 268 (1969)"holding that authoritative statements from federal agency about federal law are entitled to same deference based on thoroughness of analysis and reasoning." ("INTENTIONAL TORT")

230.    Plaintiff Gavin allege Defendant San Francisco Housing Authority "wrongful termination" of Plaintiff Gavin from her Home with a termination notice mailed after an eviction is a violation of HUD Handbook regulations 4350 § 8-13 (b)(2)(c)(3), "landlord action must state enough specificity so as to enable the tenant to prepare a defense." See also Radecki v. Joura, 114 F 3d. 115 (8th Cir.1997). ("INTENTIONAL TORT")  See Exhibit 5

231.    Plaintiff Gavin allege Defendant San Francisco Housing Authority "wrongful termination" of Plaintiff Gavin's Family from their Home with a termination notice mailed after an eviction is a violation of HUD Handbook regulations 4350 § 8-13 (b)(2)(c)(3), "landlord action must state enough specificity so as to enable the tenant to prepare a defense." See also Radecki v. Joura, 114 F 3d. 115 (8th Cir.1997). ("INTENTIONAL TORT")

232.    Plaintiff Gavin allege Defendant San Francisco Housing Authority "wrongful termination" of Plaintiff Gavin from her Home adversely impacted assisted animal Plaintiff Sir Daniel.  ("INTENTIONAL TORT")

233.    Plaintiff Gavin allege Defendant Parkmerced's was violated the rights of a federally protected class of people, such as; seniors, disabled veterans, people living below the federal poverty guideline, people with disabilities and service animals who were subsidized tenants who are members of "the Class."

234.     Plaintiff Gavin's medical condition was assessed and it was determined Plaintiff

Gavin would benefit from the assistance of a professional home health care worker to assist

Plaintiff Gavin with daily household chores, hygiene, grocery shopping and doctors

appointments. ("INTENTIONAL TORT")

235.     Plaintiff Gavin's disability also requires Plaintiff Gavin to use a respiratory

durable medical equipment machine to assist Plaintiff Gavin in breathing. ("INTENTIONAL

TORT")

236.     Plaintiff Gavin's mobility disability requires Plaintiff Gavin to use a

wheelchair to ease the pain in Plaintiff Gavin's legs, crutches, cane, walker, and leg

braces. ("INTENTIONAL TORT")

277.     Plaintiff Gavin has a physical impairment mobility disability that

substantially limits one or more major life activities such as walking, standing,

bending or caring for herself as defined in 42 U.S.C. § 3602(h); Cal. Gov't Code §

12955.3.   ("INTENTIONAL TORT")

238.     Plaintiff Gavin alleges Defendant Nathanael Player by Defendant Nathanael

Player Wrongful Conduct wrongfully intentionally inflicted emotional distress against

Plaintiff Bamidele Hambolu, shame, humiliation and damages. ("INTENTIONAL TORT")

239.     Plaintiff Gavin alleges Defendant Homeless Advocacy Project by Defendant

Homeless Advocacy Wrongful Conduct wrongfully intentionally inflicted emotional

distress against Plaintiff Gavin's Family, shame, humiliation and damages.

("INTENTIONAL TORT")

240.     Plaintiff Gavin alleges Defendants SFHA by Defendants SFHA's Wrongful

Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin,

shame, humiliation and damages. ("INTENTIONAL TORT")

241.   Plaintiff Gavin alleges Defendant Henry Alvarez by Defendants Henry Alvarez Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin's Family, shame, humiliation and damages. ("INTENTIONAL TORT")

242.   Plaintiff Gavin alleges Defendant Nicole Dickerson-McCray by Defendant Dickerson-McCray Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin, shame, humiliation and damages. ("INTENTIONAL TORT")

243.   Plaintiff Gavin alleges Defendant Ophelia B. Basgal by Defendants Ophelia B. Basgal's Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin's Family, shame, humiliation and damages. ("INTENTIONAL TORT")

244.   Plaintiff Gavin alleges Defendant Diana D. Farsai by Defendants Diana D. Farsai Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin's Family, shame, humiliation and damages. ("INTENTIONAL TORT")

245.   Plaintiff Gavin alleges Defendant HUD General Counsel Helen R. Kanosky by Defendants Helen R. Kanosky's Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin's Family, shame, humiliation and damages. ("INTENTIONAL TORT")

246.   Plaintiff Gavin alleges Defendant HUD Secretary Shaun Donovan by Defendants Shaun Donovan Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin's Family, shame, humiliation and damages. ("INTENTIONAL TORT")

247.   Plaintiff Gavin alleges Defendant General Eric Shinseki by Defendant Gen. Eric Shinseki's Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin's Family, shame, humiliation and damages. ("INTENTIONAL TORT")

**EIGHT CAUSE OF ACTION**
(Breach of Implied Covenant of Fair Dealing)

248.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

249.    Plaintiff Gavin allege that Defendants SFHA by Defendants SFHA's "wrongful conduct" wrongfully breach Defendants SFHA's implied covenant of fair dealing in Plaintiff Gavin's Lease in accordance to 42 U.S.C. 1437F (d)(1)(B)57 and Cal. Civ. Code 337(3)58 ("BREACH OF IMPLIED COVENANT OF FAIR DEALING")

250.    Plaintiff Gavin alleges that Defendant SFHA not responding to Plaintiff Gavin's "reasonable accommodation" with utility fees in accordance to 24 C.F.R. 982.517(e)59 of for utilities was an *anticipatory constructive breach* violating the rights of Plaintiff Gavin.

251.    Plaintiff Gavin alleges that Defendant SFHA utility schedule of billing for utilities was an *unjust enrichment* violating rights of Plaintiff Gavin, Plaintiff Gavin's family and assisted animal. ("BREACH OF IMPLIED COVENANT OF FAIR DEALING")

252.    Plaintiff Gavin alleges that Defendant SFHA utility schedule for Plaintiff Gavin's billing for utilities was a *torturous* interference with violating rights of Plaintiff Gavin in accordance to 24 C.F.R 982.517(e). ("BREACH OF IMPLIED COVENANT OF FAIR DEALING") See Exhitits 7 and 8

---

57 2 U.S.C. A. § 1437f(d)(1)(B) Subsided Housing: federal regulations are mandatory as they set guidelines for evictions.

58 Cal. Civ. Code 337(3) Breach of Contract: An action based upon the rescission of a contract in writing. The time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake. Where the ground for rescission is misrepresentation under Section 359 of the Insurance Code, the time does not begin to run until the representation becomes false.

59 24 C.F.R. 982.517 (e): 24 C.F.R. 982.517 (e): Higher utility allowance as reasonable accommodation for a person with disabilities. On request from a family that includes a person with disabilities, the PHA must approve a utility allowance which is higher than the applicable amount on the utility allowance schedule if a higher utility allowance is needed as a reasonable accommodation in accordance with 24 CFR part 8 to make the program accessible to and usable by the family member with a disability.

VERIFIED COMPLAINT - 44

253.    Plaintiff Gavin alleges that method of billing for utilities was a *breach of contract for failure to perform or failure of consideration* of Plaintiff Gavin's medical condition violating rights of Plaintiff Gavin in accordance to 24 C.F.R. 982.517 (e).

254.    Plaintiff Gavin allege that Defendants San Francisco Housing Authority violated the ("HCV") contract and HUD and federal regulations. ("BREACH OF IMPLIED COVENANT OF FAIR DEALING")

255.    Defendant SFHA knew Plaintiff Gavin was disabled and continues to violate Plaintiff Gavin's rights under the Americans with Disabilities Act in accordance to 24 C.F.R. 100.204 "reasonable accommodation"

256.    No one in Plaintiff (Gavin's) family violated Federal Housing Authority rules.

### NINTH CAUSE OF ACTION
(Mistake)

257.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

258.    On January 26, 2012 at a SFHA meeting Plaintiff Gavin stated that there was a possibility that Plaintiff Gavin and other subsidized tenants were overcharged for utilities SFHA Commissioner Amos Brown told Plaintiff Gavin to "shut up and sit down". See also Wright v. City of Roanoke Development and Housing Authority, 479 U.S. 418 (1987); Johnson v. Housing Authority of Jefferson Parrish, 442 F. 3d 356 Court of Appeals 5th Circuit (2006) subsidized tenants have a right to challenge the amount of utility bills.

259.    Plaintiff Gavin alleges Defendant SFHA by Defendant SFHA's Wrongful Conduct wrongfully breach Defendants SFHA's implied covenant of fair dealing in Plaintiff Gavin's Lease. ("MISTAKE")

260.    No one in Plaintiff Gavin's family violated Federal Housing Authority rules.

261.    On September 19, 2911 Plaintiff Gavin was served a second Three-Day notice for

utilities billed for the amount of $400.64 discrepancy less than the first Three-Day notice served

on August 24, 2011 that was unsigned for utilities. ("MISTAKE")

262.    On July 25, 2012 Plaintiff Bamidele Hambolu, Plaintiff Gavin, Plaintiff's

Gavin's family, Plaintiff Gavin's service animal Sir Daniel were evicted from their

home by San Francisco Sheriff's due to outstanding utility fees.  ("MISTAKE)

263.    Plaintiff Gavin alleges that Defendant SFHA "wrongful utility schedule"

for utility fees is a violation of Plaintiff Gavin's rights under Cal. Civ. Code

§170960; See also Fritz v. Ehrmann (2006) 136 Cal.App.4th 1374, 1390. ("MISTAKE")

264.    Plaintiff Gavin alleges that Defendant SFHA wrongfully mailed Plaintiff

Gavin with an improper notice to terminate Plaintiff Gavin from the (HCV") program

after Plaintiff Gavin and Plaintiff's Gavin Family and assisted animal were evicted if

a violation of HUD regulations handbook  in accordance to 24 C.F.R. 247.4 (a) and

HUD Handbook:  The notice of termination of tenancy mus "[s]tate that the tenancy is

terminated on a date specified therein as explained by the Rhodes Island Supreme

Court, "the federal regulation ….requires an explicitly stated date for termination of

the lease."  ("MISTAKE")

265.    Plaintiff Gavin alleges Defendants SFHA termination notice was in

adequate and mailed after an eviction in accordance to 24 C.F.R 247 (c).  ("MISTAKE")

---

60"The interpretation of section 340.6 put forth by Ehrmann would undermine the legislative intent behind the
tolling provision for the majority of situations where an attorney commits malpractice during the
preparation of transactional documents.  In most instances, mistakes in transactional documents do not
manifest themselves until after the project is completed.  The first impulse of a client who learns about a
problem in a transactional document prepared by his or her attorney is to return to that attorney for an
explanation or a fix.  An honest attorney will admit to mistakes made and work in good faith to correct or
mitigate any damage, as Ehrmann did here.  The client is unlikely to consult another source for legal advice
while the first attorney is working to rectify the issue—a process that could take years.  This means it
would be up to the attorney who made the mistake to inform the client that time is ticking on a legal
malpractice action.  While we have no doubt that most attorneys would do just that, the interpretation urged
by Ehrmann would afford unscrupulous lawyers an opportunity to simply let the statute run.  It would be
incongruous to construe the legal malpractice scheme in a way that would compel only honest attorneys to
face the consequences of their negligent actions."  Fritz v. Ehrmann (2006) 136 Cal.App.4th 1374, 1390.

266.    Plaintiff Gavin alleges Defendant Nicole Dickerson-McCray non-response to provide Plaintiff Gavin with a copy of Plaintiff Gavin's file to prepare for a proper defense was a violation of Plaintiff Gavin's Fourteenth Amendment rights in regards to eviction procedure accordance to federal regulation 24 C.F.R. § 247.4 (a)61. ("DUE PROCESS") and ("EQUAL PROTECTON"), ("MISTAKE")

267.    Plaintiff Gavin allege Defendant Parkmerced's failure to give a warning notice as required by the federal regulation violation of 24 C.F.R. § 247.4 (c) "requiring a minimum of a 30-day notice," and a violation of "good cause" for an eviction under 24 C.F.R. § 247.3 (a) - (b). ("WRONGFUL TERMINATION OF TENANCY"), ("DUE PROCESS") and ("EQUAL PROTECTON"), ("MISTAKE")

### TENTH CAUSE OF ACTION
(Duress Cal. Civ. Code §3294 & § 335.1)

268.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

269.    On July 25, 2012 Plaintiff Gavin was found unconscious by her Plaintiff Bamidele Hambolu son and was taken to the hospital by an ambulance.

270.    On July 25, 2012 Plaintiff Gavin was admitted to the hospital for heart palpitations.

271.    On July 25, 2012 Plaintiff Gavin, Plaintiff Gavin's family and Plaintiff Sir Daniel were "wrongfully evicted" from their home.

---

6124 C.F.R. § 247 (a) and HUD Handbook: The notice of termination of tenancy must "[s]tate that the tenancy is terminated on a date specified therein as explained by the Rhodes Island Supreme Court, "the federal regulation ....requires an explicitly stated date for termination of the lease."

272.    Plaintiff Gavin has a physical impairment mobility disability that substantially limits one or more major life activities such as walking, standing, bending or caring for herself as defined in 42 U.S.C. § 3602(h); Cal. Gov't Code § 12955.3.

273.    Plaintiff Gavin allege that Defendant SFHA's action against Plaintiff Bamidele Hambolu, Plaintiff Gavin, Plaintiff Gavin's family and assisted animal Plaintiff Sir Daniel "shocks the conscience" as the swift and intense force through the exertion of force and power against rights or laws were violent and denied Plaintiff Bamidele Hambolu, Plaintiff Gavin, Plaintiff Gavin's family, and assisted animal Plaintiff Sir Daniel their rights.62 ("DURESS")

274.    Plaintiff Gavin alleges Defendant SFHA by Defendants SFHA's Wrongful Conduct wrongfully breach Defendant SFHA's promises to Plaintiff Gavin to deal fairly with Plaintiff Gavin from the time of the alleged formation of Plaintiff Gavin's ("HCV") contract to the present upon which Plaintiff Gavin relied that was both reasonable and foreseeable thereby causing Plaintiff Gavin to incur damages. Cal.Civ.Code § 3294 (2). ("DURESS")

275.    Plaintiff Gavin alleges Defendant SFHA by Defendant SFHA's Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Bamidele Hambolu, Plaintiff Gavin, Plaintiff Gavin's Family thereby causing Plaintiffs Gavin, Plaintiff Gavin's family shame, humiliation and damages. ("DURESS")

276.    Plaintiff Gavin alleges Defendant SFHA by Defendant SFHA's Wrongful Conduct wrongfully intentionally inflicted emotional distress against Plaintiff Gavin, Plaintiff Gavin's family, Plaintiff Gavin  thereby causing Plaintiffs Gavin, Plaintiff Gavin's family mental anguish, stress and duress.  ("DURESS")

---

62 Violence: swift and intense force, rough or injurious physical force, action or treatment, an unjust or unwarranted exertion of force and power as against right or laws.  A violent act or proceeding

VERIFIED COMPLAINT - 48

277. Plaintiff Gavin alleges that Defendant SFHA *committed strict liability for injury to a service animal* Plaintiff Sir Daniel thus causing a great amount of emotional distress due to the fact he has lost access to the spacious garden area that was a part of his daily routine.

("DURESS")

### ELEVENTH CAUSE OF ACTION
Retaliation Eviction Cal.Civ.Code 1942.5 (a)

278. Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

279. Plaintiff Gavin alleges defendants violated Plaintiff Gavin's of rights against "retaliation" under Cal. Civ. Code §1942.5(a)[63] and retaliated against Plaintiff Gavin for asserting Plaintiff Gavin's First and Fourteenth Amendment rights. See Exhibit HUD Letters

4, 5, and 6.

280. Plaintiff Gavin allege defendants violated Plaintiff Gavin's of rights against "retaliation" under Cal. Civ. Code §1942.5(a)[64] and retaliated against Plaintiff Gavin for communicating with HUD regarding utility notices. See Exhibit HUD Letter dated January 27, 2012.

### TWELVETH CAUSE OF ACTION
Discrimination Under Federal Grants and Program Executive Orders 11063 and 12259

---

[63]Cal. Civ. Code §1942.5(a): If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:
(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability. (2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.
[64]Cal. Civ. Code §1942.5(a): If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:
(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability. (2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

282. Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

283. On November 20, 1962 President John Fitzgerald Kennedy signed Executive Order 11063 prohibiting discrimination in the United States that received federal financial assistance for subsidized housing.

284. On December 31, 1980 President James Earl Carter signed Executive Order12259 that amends and further strengthens Executive Order 11063 of the Fair Housing Act.

285. Plaintiff Gavin alleges Defendant SFHA violated Plaintiff Bamidele Hambolu's rights in accordance to Presidential Executive Order 11063 and 12259 Fair Housing Act.

286. Plaintiff Gavin alleges Defendant SFHA violated Plaintiff Plaintiff Gavin and Plaintiff Gavin's Family and assisted animal rights in accordance to Presidential Executive Order 11063 and 12259 Fair Housing Act.

287. Plaintiff Gavin alleges Defendant Nicole Dickerson-McCray violated Plaintiff Bamidele Hambolu's rights in accordance to Presidential Executive Order 11063 and 12259 Fair Housing Act.

288. Plaintiff Gavin alleges Defendant Nicole Dickerson-McCray violated Plaintiff Gavin, Plaintiff Gavin's and assisted animal Sir Daniel rights in accordance to Presidential Executive Order 11063 and 12259 Fair Housing Act.

289. Plaintiff Gavin alleges Defendant Henry Alvarez III violated Plaintiff Bamidele Hambolu's rights in accordance to Presidential Executive Order 11063 and 12259 Fair Housing Act.

290. Plaintiff Gavin alleges Defendant Henry Alvarez III violated Plaintiff

Gavin, Plaintiff Gavin's Family and assisted animal Sir Daniel rights in accordance to Presidential Executive Order 11063 and 12259 Fair Housing Act.

**THIRTEENTH CAUSE OF ACTION**
(Deprivation of Housing Accommodations 24 C.F.R. 100.204)

291. Plaintiff Gavin realleges the above paragraphs as though full set forth herein.

292. Plaintiff Gavin allege Defendant SFHA continues to violates Plaintiff Gavin's rights in accordance to 29 U.S.C. § 794 (a) and 24 C.F.R. 100.204(a)65. *"Promulgation of rules and regulations. No otherwise qualified individual with a disability in the United States, as defined in section 705 (20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."*

---

65 24 C.F.R. §100.204(a)Reasonable Accommodation: It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

VERIFIED COMPLAINT - 51

293. Plaintiff Gavin allege Defendant SFHA Executive Director Nicole Dickerson-McCray violates Plaintiff Gavin's rights in accordance to 29 U.S.C. § 794 (a) and 24 C.F.R. 100.204(a).

294. Plaintiff Gavin allege Defendant SFHA Commissioners violate Plaintiff Gavin's rights in accordance to 29 U.S.C. § 794 (a) and 24 C.F.R. 100.204(a).

295. Plaintiff Gavin allege Defendant Henry Alvarez continues to violate Plaintiff Gavin's rights in accordance to 29 U.S.C. § 794 (a) and 24 C.F.R. 100.204(a).

296. Plaintiff Gavin allege Defendant Regional Administrator Ophelia B. Basgal continues to violate Plaintiff Gavin's rights in accordance to 29 U.S.C. § 794 (a) and 24 C.F.R. 100.204(a).

297. Plaintiff Gavin allege Defendant Secretary Shaun Donovan continues to violate Plaintiff Gavin's rights in accordance to 29 U.S.C. § 794 (a) and 24 C.F.R. 100.204(a).

298. Plaintiff Gavin allege Defendant HUD Lead Counsel Helen R. Kanosky continues
to violate Plaintiff Gavin's rights in accordance 29 U.S.C. § 794 (a) and 24 C.F.R. 100.204(a).

**FOURTHTEENTH CAUSE OF ACTION**
Deprivation of Rights [42 U.S.C. § 1983; US CONST. AND AMENDMENT'S 1,4,5,6,8,14]

299. Plaintiff Gavin realleges the above paragraphs as though full set forth herein.

300. Plaintiff Gavin alleges Defendants SFHA's Wrongful Conduct deprived Plaintiff Bamidele Hambolu of his federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

301. Plaintiff Gavin alleges Defendants SFHA's Wrongful Conduct deprived Plaintiff Gavin, and Plaintiff Gavin's Family of their federal and constitutional

rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

302. Plaintiff Gavin alleges Defendant SFHA Commissioners and Does 1-30 Wrongful Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

303. Plaintiff Gavin alleges Defendant Henry Alvarez III Wrongful Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

304. Plaintiff Gavin alleges Defendant Nicole Dickerson-McCray Wrongful Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

305. Plaintiff Gavin alleges Defendant Barbara Smith Wrongful Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

306. Plaintiff Gavin alleges HUD Defendant Ophelia B. Basgal Wrongful Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

307. Plaintiff Gavin alleges HUD Defendant Diana D. Farsai Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

308. Plaintiff Gavin alleges Defendant HUD Secretary Shaun Donovan Wrongful Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in accordance to 42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

309.    Plaintiff Gavin alleges Defendant HUD Lead Counsel Helen R. Kanosky
Wrongful Conduct deprived Plaintiff Bamidele Hambolu, Plaintiff Gavin and Plaintiff
Gavin's Family of their federal and constitutional rights enumerated the U.S. Const in
accordance to  42 U.S.C. § 1983; U.S. Const. and Amendments [1, 4, 5, 6, 8, 14].

## FIFTEENTH CAUSE OF ACTION
Interpleader

310. Plaintiff Gavin realleges the above paragraphs as though fully set forth
herein.

 herein.

311.    Plaintiff Gavin faces multiple claims from Defendants SFHA's that gives
rise to multiple liability relating to Defendants SFHA's Wrongful Conduct.   Cal.
Const. Art. 1, § 7(a); Cal. Code Civ. Proc. §§ 386, 386.1, 386.5; *Principal Life Ins.
Co. v. Peterson* (2007) 156 Cal.App.4th 676, 682; United States Constitution Preamble,
Articles 1 – 7, Amendments 1, 4, 5, 6, 8 and 14; 28 U.S.C. § 1335; *Hollister v.
Soetoro*, 601 F.Supp. 179, 181 (D.D.C. 2009)

312.    Plaintiff Gavin faces multiple claims from Defendant  Nathanael Player
that gives rise to multiple liability relating to Defendant Nathanael Player's
Wrongful Conduct.

313.    Plaintiff Gavin faces multiple claims from Defendants Homeless Advocacy
Project that gives rise to multiple liability relating to Defendants Project's
Wrongful Conduct.

## CONCLUSION

Plaintiff Gavin prays that the Court permit Defendants SFHA, HUD DC Office,
City and County of San Francisco, HUD Region IX Office and Does 1-50 to answer
Plaintiff Gavin's Complaint so that Plaintiff Gavin may proceed to discovery to

VERIFIED COMPLAINT - 54

develop the above causes of action to redress the harm Defendants Defendants SFHA, HUD

DC Office, City and County of San Francisco, HUD Region IX Office and Does 1-50  have

caused Plaintiff Bamidele Hambolu, Plaintiff Gavin, Plaintiff Gavin's Family and

Plaintiff Gavin's assisted animals.  If such is the order of the Court, Plaintiff

Gavin will at least have the opportunity to be made whole again in the interests of

justice,[66,]mercy[67] and faith.[68]

###

###

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff(Gavin), Plaintiff (Gavin's) family, Plaintiff (Hambolu) and

members of (The Class) prays for judgment against Defendants Defendants SFHA, HUD DC

Office, City and County of San Francisco, HUD Region IX Office and Does 1-50 as

follows:

1.    This action be certified as a class action on behalf of Plaintiff (Gavin), Plaintiff

(Gavin's) family Plaintiff (Hambolu) and assisted animal Plaintiff (Sir Daniel) and (Lady Ebony).

---

[66] Black's Law Dictionary defines justice as "(17c) 1. The fair and proper administration of laws." Black's Law Dictionary (2009) 9th edition, Bryan A. Garner editor-in-chief. "It is a joy for the just to do justice." Holy Bible Proverb 21:15.

[67] Black's Law Dictionary defines mercy as "(13c) Compassionate treatment, as of criminal offenders or of those in distress; esp. imprisonment, rather than death, imposed as a punishment for capital murder. See clemency." Black's Law Dictionary (2009) 9th edition, Bryan A. Garner editor-in-chief. " 'But go and learn what this means, 'I desire mercy, not sacrifice.' For I did not come to call the righteous but sinners to repentance.' " Holy Bible Matthew 9:13.

[68]  Black's Law Dictionary defines faith and trust as "See flim flam." Black's Law Dictionary (2009) 9th edition, Bryan A. Garner editor-in-chief. Black's Law Dictionary defines flim flam as "(16c) A scheme by which a person is tricked out of money; confidence game. The term originated as the name of a machine at the heart of a mid-19th century patent case, *Sloat v. Spring*, 22 F.Cas. 330 (C.C.E.D. Pa. 1850). — Also termed *faith and trust*." Black's Law Dictionary (2009) 9th edition, Bryan A. Garner editor-in-chief. "Faith is the substance of things hoped for, the evidence of things not seen." Holy Bible Hebrews 11:1; " 'Woe to you, scribes and Pharisees, hypocrites!  For you pay tithe of mint and anise and cumin, and have neglected the weightier matters of the law: justice and mercy and faith. These you ought to have done, without leaving the others undone.' " Holy Bible Matthew 23:23; "The grace of our יהוה Jesus Christ be with you all. Amen." Holy Bible Revelation 22:21.

2.  For cost of litigation and attorney's fees.

3.  For economic damages according to proof;

4.  For noneconomic damages according to proof;

5.  For exemplary damages according to proof;

6.  For declaratory relief according to proof;

7.  For an order enjoining SFHA, HUD DC Office City and County of San Francisco and HUD Region IX Office Wrongful Conduct during the pendency of this action;

8.  Injunctive relief in the form of an order requiring Defendants to disgorge all ill-gotten gains and awarding Plaintiff ("Gavin"), Plaintiff ("Gavin's Family"), Plaintiff ("Gavin's") assisted animals ("Sir Daniel") and ("Lady Ebony") full restitution of all monies wrongfully acquired by Defendants by means of such unfair and unlawful conduct;

9.  For a temporary restraining order, a preliminary injunction and a permanent injunction enjoining all defendants, and each of them, and their heirs, agents, servants, employees and all persons acting under, in concert with, or for them from continuing any harmful conduct;

10.  For an accounting according to proof;

11.  For prejudgment interest and post judgment according to proof;

12.  For specific performance of the Lease;

13.  For Plaintiffs (Gavin's) Plaintiff (Gavin's) Family, Plaintiff (Bamidele Hambolu's) and members of (The Class) costs of suit herein incurred;

14.  For treble damages according to proof; and

18.  For such other relief as the Court may deem proper.

Dated: _____7/1/14_____     Signed: _Bamidele Hambolu_

Bamidele Hambolu
Pro Se Litigant

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby's request a jury trial on all issues raised in this Complaint.

Date: _____7/1/2014_____

Signed: _Bamidele Hambolu_

Print: _Bamidele Hambolu_

## VERIFICATION

I, Bamidele Hambolu, am the plaintiff in the above-entitled action. I have read the

foregoing complaint and know the contents thereof. The same is true of my own knowledge,

except as to those matters which are therein alleged on information and belief, and as to those

matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Dated: _____7/1/14_____     Signed: _Bamidele Hambolu_

Bamidele Hambolu
Pro Se Litigant

VERIFIED COMPLAINT - 57

# CLAIM AGAINST THE SAN FRANCISCO HOUSING AUTHORITY

The undersigned hereby presents the following claim against the San Francisco Housing Authority in accord with the provisions of Government Code §910:

Name and Address of Claimant ___Bamidele Hambolu___
___1230 Market St #4___

(If applicable) Tenant I.D. No. ___N/A___ Name of Development ___N/A___

Soc. Security No. ___N/A___ DOB ___N/A___ Occupation ___N/A___

Name/Address of Employment ___N/A___

Address to which notices are to be sent: ___1230 Market St #4___

Date of Incident ___August 4, 2012___ Time of Incident ___N/A___

Location of Incident ___22 Grijalva Drive___

Description of the incident including your reason for believing that the Housing Authority is liable for your damages.

___SAN FRANCISCO Housing Authority wrongfully___
___terminated my family from the section 8___
___program___

Description of all damages which you have incurred as a result of the incident. (Please itemize)

___violation of my rights___ Amount $ ___To Be Dertimined___
___violation of my rights___ Amount $ ___To Be Determined___
___violation of my rights___ Amount $ ___To Be Determined___

Total dollar amount of all damages that you are claiming. (Please attach all estimates that are available).
Amount $ ___To Be Determined___

Name or names of any Housing Authority employee(s) causing the damage you are claiming.
___Nicole Dickerson, Barbara Smith -see attachment___

Name and address of any and all witnesses to this incident.
___The Commissioners___

If this is a claim for indemnity, on what date were you served with the underlying lawsuit? _____

Signature of Claimant ___Bamidele Hambolu___ Date ___June 4, 2014___

Print Name ___Bamidele Hambolu___ Telephone ___N/A___

*COMPLETE THIS FORM IN ITS ENTIRETY. Send signed form to: YOUR PROPERTY MANAGER OR
THE HUMAN RESOURCES DEPARTMENT AT 1815 EGBERT STREET, 2nd FLOOR, SAN FRANCISCO CA 94124

1

Parkmerced

## RESIDENTIAL TENANCY AGREEMENT

| Security Deposit: | $0.00 |
| Rent Due Upon Move-In: | $2,293.00 |
| For the Period: | 3/1/2010 to 3/31/2010 |
| Application Fee: | $40.00 |
| Other: | $0.00 |
| **TOTAL CHARGES:** | **$2,333.00** |

1. **INTRODUCTION:**   **Parkmerced Investors Properties, LLC dba Parkmerced** ("OWNER") rents to **Hambolu, Lynn** ("LESSEE"), and Lessee hires **22 Grijalva Drive , San Francisco, CA 94132 (24040)** (the "PREMISES"). No other portion of the building wherein the Premises is located is included unless expressly provided for in this Agreement.

2. **TERM:**   The term of this rental shall begin on **March 1, 2010** and end on **February 28, 2011**. Lessee must, upon termination of the initial term of this lease, execute a written extension or renewal of the lease term for a new term of like duration. All lease covenants will apply for the new term, except that the monthly base rent may, at Owner's discretion, be increased as allowed by local and/or state law. If the lease term is for a period of time over one year, the landlord reserves the right to impose annual allowable rental increases as allowed by law, as well as any other rental increase permitted by state and local regulation. Such increases shall be noticed pursuant to Civil Code Section 827. Failure to execute a lease extension or renewal after written demand to do so may cause the tenancy to terminate pursuant to Section 37.9(a)(5) of the San Francisco Residential Rent Stabilization and Arbitration Ordinance.

3. **PHYSICAL POSSESSION:**   If Owner is unable to deliver possession of the Premises at the commencement of the term, Owner shall not be liable for any damage caused thereby, nor shall this Agreement be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Should the Premises not be available for Lessee to take possession at the commencement of the Term specified herein, Owner reserves the right to substitute the Premises with an equivalent size or larger size Premises ("Substituted Premises") at the same monthly rental rate specified herein. Lessee agrees that upon delivery of the Substituted Premises at the commencement of the Term, Lessee shall be bound to all covenants and conditions contained herein.

4. **RENT:**   The initial monthly base rent for the Premises shall be **$2,293.00**. All rent is due and payable in advance on the **first** day of each and every month (the "Due Date") without offsets, deductions or credits. In the event of roommates, or another form of multiple tenancy, Lessee understands and agrees that rent shall be paid with a single payment and that it is up to Lessee to collect individual checks independently in order to submit a combined, single payment. All rent shall be paid to **Parkmerced Investors Properties, LLC dba Parkmerced** or such other person, as Owner shall designate in writing. Lessee agrees always to pay rent by personal check or cashier's check and not use cash or money order. Owner will accept rent payments only from the actual lessees, and no third party checks will be accepted. Rent shall be paid to Owner at the following address: **3711 19th Avenue, San Francisco, CA   94132** or at such other place designated by Owner. Any other sums, which may become due from Lessee from time to time, shall be considered rent and will be due on the Due Date. Lessee bears the risk of loss or delay of any payment made by mail. Owner must receive mailed rent payments on or before the Due Date. Rent for any partial month shall be pro-rated at the rate of 1/30th of the monthly rent per day. Owner may apply any payment made by Lessee to any obligation of Lessee to Owner notwithstanding any dates or other direction from Lessee that accompanies any such payment. Any attempt by Lessee to allocate a payment in any other way shall be null and void.
Initials: _____

5. **SECURITY DEPOSIT:**   **Before the commencement of the term**, Lessee shall pay a Security Deposit of **$0.00**, (the "Security Deposit") for the purposes set forth in Civil Code Section 1950.5. No trust relationship between Owner and Lessee is created because of the Security Deposit and Owner may commingle the Security Deposit with other funds of Owner. Owner may retain such amounts of the Security Deposit as allowed by law including, but not limited to, Lessee's obligation to restore, replace or return personal property. Owner shall, within the time period allotted by law, refund any balance after such deductions to Lessee after Lessee has vacated the Premises. Lessee shall not be deemed to have vacated the Premises for purposes of this paragraph until: a) Lessee returns to Owner ALL keys to the Premises; and b) Lessee has surrendered the Premises to Owner free and empty of all persons claiming any right to possess the Premises. Any balance of the Security Deposit and an accounting of any deductions therefrom will be mailed to Lessee at the Premises unless Lessee provides, in writing to Owner, a mailing address to which the balance, if any, of the Security Deposit and the accounting should be sent. Owner's check or other draft refunding any balance of the Security Deposit may be made in the name of all original lessees regardless of the party who in fact made the deposit and regardless of the identity of the persons then occupying the Premises. Lessee may NOT apply the Security Deposit, nor any portion thereof, to the last month's rent. If any portion of the Security Deposit is applied by Owner to any obligations of Lessee at any time during the tenancy Lessee must, upon 5 days written notice, reinstate the Security Deposit to its full original amount.

So long as any law so requires, commencing with the date Owner received the Security Deposit, Owner shall pay to

Initials: _____

1

 

, ᵀ  Parkmerced

**13. ROOF:** . Use of the roof for any purpose by Lessees and/or guests is NOT permitted.

## 14. ASSIGNMENT AND SUBLETTING:

**No Assignment or Subletting: Lessee agrees and covenants not to assign this Agreement or sublet the Premises or any portion of the Premises. Therefore, neither all or any portion of the premises may be rented by any of the named Lessee(s) or any other persons to any other persons other than the named Lessee(s). This obligation of Lessee is intended as a strict and absolute prohibition against subletting and assignment and may not be waived by either party. The parties agree that violation of this covenant and obligation shall be just cause for eviction.**

**Lessee(s) Initials:** ⟪E.R.⟫

**15. STORAGE:**    No storage space outside of Premises is authorized, permitted or provided under this Agreement.

**16. PARKING:**    Premises (check one) ☒ Does NOT ☐ Does include parking for any motor vehicles. In cases where premises does not include parking, parking is prohibited on or about the premises except where allowable by law. Where parking is provided or permitted, any parking or related plackard, sticker or other permit document as provided by Owner or Agent of Owner must be in plain and clear site so as to be seen in the front windshield of the permitted vehicle.

**17. UTILITIES:**    Lessee shall pay directly for all utilities, services and charges provided to the Premises EXCEPT for those listed as follows AS: **NONE**. Lessee agrees to put all utilities in Lessee's name prior to or when Lessee takes possession of the premises. Lessee agrees to comply with any energy or water conservation programs implemented by Owner. Lessee understands that the rent paid by all lessees is partially determined by the cost of utilities. Nothing contained herein prevents Owner from passing through to Lessee utility costs as provided by law.

In accordance with local regulations Owner shall provide one working telephone line and one working telephone jack into the Premises. Lessee may, at its sole expense, add additional lines and/or jacks, but no more than three, and said installation shall not cause cosmetic or physical damage to the Premises or any other part of the building. It is Lessee's responsibility to maintain and to repair all said lines. Unlike the local gas and electric company, the telephone company charges for time required to repair telephone lines, wall jacks, etc.

**Lessee(s) Initials:** ⟪E.R.⟫

**18. MAINTENANCE AND REPAIRS:**    Lessee shall, at Lessee's expense, at all times maintain the Premises, furnishings and appliances, if any, in a clean and good condition and shall surrender the same upon termination of tenancy in the same condition as received (excepting normal wear and tear). Lessee understands that Lessee is responsible for the cost of repair of ALL damages in and/or about the Premises whether caused by Lessee, Lessee's guests or invitees.

Except in an emergency, maintenance and repair requests must be made in writing and delivered to Owner or its Agent, or over the phone. Such notice shall also be deemed permission to enter the Premises to perform such maintenance or repairs in accordance with Civil Code Section 1954 unless otherwise specifically requested, in writing, by Lessee. Lessee, however, may not place any unreasonable restrictions upon such access or entry. Owner believes the Premises is in a safe and habitable condition until written notice to the contrary is received by Owner.

In the event that Premises is provided with hardwood floors or other non-carpeted floor surfaces, Lessee hereby agrees to keep at least 80% of such areas covered with floor rugs or similar coverings. It is also hereby understood that Lessee shall not change or replace any window coverings or other dressings visible from outside the Premises or building without the prior written consent of Owner.

Lessee acknowledges that the Premises and the building from time to time may require renovations or repairs to keep them in good condition and repair and that such work may result in temporary loss of use of portions of the building or Premises and may inconvenience Lessee. Owner agrees to do any such work in a manner that is consistent with cost efficiencies, is the least disruptive or intrusive to Lessee, and Lessee agrees that any such work is part of the condition of the rental of the Premises and is contemplated in the amount of rent paid therefore.

**19. ALTERATIONS:**    Lessee shall NOT redecorate, paint, refinish floors, or otherwise alter the Premises in any way; Lessee shall not apply adhesive paper to any cabinets, walls, or doors; nor shall Lessee hang any plants, planters or lighting fixtures from ceilings or walls; nor shall Lessee tack, nail or glue any coverings to floors or walls without prior written consent of Owner. Lessee shall not install nor operate any washing machines, clothes dryers, air-conditioning or heating units, portable dishwashers, deep-freeze units (or other such appliances), pianos, organs, or outside antennae on the Premises without Owner's prior written consent. No plants, planters or plant boxes may be placed directly on floors or on carpets, on window ledges or on fire escapes.

**20. SATELLITE DISHES:**    Any Satellite Dish installations shall be subject to all of the following rules and conditions: a)

3



Parkmerced

days and terminate the Residential Tenancy Agreement before the expiration date of its term. Such notice will be effective thirty (30) calendar days from the date it is given and rent must be paid through the thirty day notice period. Lessee must and shall, at the time of the service of pay to Owner, in addition to the rent owed during the thirty day notice period, a termination fee equal to **1 month's current rent**. If the full term of the lease is not fulfilled. Such payment will release lessee only from any further rental obligations beyond the date the termination is effective. However, all of the terms of the Residential Tenancy Agreement must be complied with through the date of vacating the premises. In the event the lessee vacates the premises before the lease expires without electing to pay said termination fee or fails to pay the termination fee for any reason, lessee shall be liable for all rent owed for the remainder of the lease or up to the time the premises are relet as well as all costs incurred by Owner to relet the premises, whichever occurs first.

**29. HOLDING OVER:**   Lessee agrees to vacate the Premises by **12:00 midnight** on the termination date of this tenancy. Should Lessee fail to vacate by said time the hold-over shall be presumed to be willful and deliberate and Owner shall be entitled to damages for the hold-over period, plus such other expenses incurred due to breach of this condition of the Agreement.

**30. NUISANCE:**   Lessee shall not commit, nor permit to be committed, any waste or nuisance upon or about the Premises. Lessee shall not disturb other lessees in the building containing the Premises or others in adjoining properties. Three complaints in any nine-month period shall constitute a substantial interference with other lessees' comfort, safety and enjoyment and shall be deemed a just cause for eviction. Lessee shall also be liable for the actions of their guests and/or invitees.

Lessee(s) Initials: _____

**31. HOLD HARMLESS:**   Owner shall not be liable for any damages or injury to Lessee, or any other person, or to any property, occurring on the Premises or any part thereof, or in common areas thereof, unless such damage is the proximate result of the negligence or unlawful act of Owner, his Agents or his employees. Lessee shall indemnify, defend and hold Owner and its Agents harmless from all claims of loss or damage to property and of injury to or death of any person or persons caused by the intentional acts or negligence of Lessee, his guests, licensees, or invitees occurring on or about the Premises including other areas of the building, adjacent sidewalks, streets, etc. Lessee hereby expressly releases Owner and/or Agent from any and all liability for loss or damage to Lessee's property or effects whether in the Premises, garage, storerooms or any other location in or around the building or premises, arising out of any cause whatsoever, including but not limited to rain, plumbing leakage, fire or theft, except in the case that such damage has been adjudged to be the result of the gross negligence of Owner or Agent.

Lessee(s) Initials: _____

**32. INSURANCE:**   Owner's insurance does NOT provide for coverage of Lessee's personal belongings or personal liability unless as a direct and proximate result of Owner's negligence. Lessee is advised to procure and maintain at all times a policy of renter's insurance to insure all of Lessee's personal possessions. Owner will NOT accept liability or responsibility for any losses not caused by its own proximate negligence.

Lessee(s) Initials: _____

**33. ARBITRATION:**   Any controversy or claim arising out of or relating to this contract, or the breach thereof, except claims relating to possession of the premises (e.g. evictions and unlawful detainer actions) shall be settled by arbitration administered by the Judicial Arbitration & Mediation Service or the American Arbitration Association, which service may be chosen by Owner at its sole discretion, and judgment on the award rendered by the arbitrator(s) may be entered into any court having jurisdiction thereof. The parties to the arbitration shall have the right to limited discovery as is determined necessary by the arbitrator.

Lessee(s) Initials: _____

**34. LEAD DISCLOSURE:**   Many homes and apartments built before 1978 have paint that contains lead (called lead-based paint). Lead from paint chips and dust can pose serious health hazards if not taken care of properly. The law requires that lessees and lessees receive certain information before renting pre-1978 housing. By signing this Agreement, Lessee represents and agrees that Owner has provided Lessee with such information, including, but not limited to, the EPA booklet entitled "**Protect Your Family From Lead In Your Home.**" Any known lead-based paint or lead hazards at the Premises, if any, are hereby disclosed as follows: **SEE ADDENDUM.**



Parkmerced

**43. NO RELIEF FROM FORFEITURE:** Owner and Tenant stipulate that for purposes of Code of Civil Procedure Section 1179, that as a condition for granting relief from forfeiture, Tenant shall pay all back rent, Owner's attorney fees and costs, and any other damages sustained by Owner, as a condition for relief from forfeiture.

**44. REPRESENTATIONS TO THE OWNER:** The Lessee has made certain representations to the Owner about his credit history, rental history, financial affairs, criminal background and other relevant information, in order to induce the Owner to rent the Apartment to the Lessee. This Lease has been entered into in reliance by the Owner on this information, with respect to both what Lessee represented on his rental application or otherwise. In the event any of the information is untrue or misleading or incomplete then the Owner reserves the right to cancel this Lease within a reasonable time after the Owner discovers the truth. If the Owner discovers the misrepresentation(s) prior to the Lessee taking occupancy, such cancellation will preclude the Lessee from taking occupancy. Lessee acknowledges and agrees that such discovery occurring after occupancy shall be grounds for Lessee's immediate eviction at the Owner's option, and if requested to do so by Owner, Lessee shall immediately vacate the Property and shall be liable to the Owner for all of his costs, expenses and damages that he may suffer by reason of the Lessee's misrepresentation, including Owner's reasonable attorney's fees incurred.

**45. COMMUNITY POLICIES:** Lessee agrees to abide by any and all Community Policies, whether made known before or after the date of this Agreement, including, but not limited to, rules with respect to noise, odors, disposal of refuse and use of common areas. Lessee has read, understands and agrees to be bound by the existing Community Policies attached to and made part of this Agreement.

**46. ENTIRE AGREEMENT:** This Agreement consists of -1 consecutively numbered paragraphs, the Community Policies, and attachments identified as:

| | |
|---|---|
| ☒ Asbestos Disclosure | ☒ Community Policies |
| ☒ Electronic Funds Addendum | ☒ Job Loss Addendum |
| ☒ Mold/Mildew and Lead Disclosure | ☒ Move Out/Replacement Charges |
| ☒ Parking and Garage Addendum | ☒ Recreational Facility Regulations |
| ☒ Security Deposit Agreement | ☒ SureDeposit Enrollment Form |
| ☒ Tenancy Agreement for Payment of Rent | ☒ Tenant Information Sheet |
| ☒ Utility Addendum | ☒ Utility Provider Information |
| ☒ Move-In/Move-Out Inspection | |

The foregoing constitutes the entire Agreement between the parties and may be modified only in writing signed by all parties except that Owner may change the terms of the tenancy and this Agreement pursuant to Civil Code Section 827.

**BY SIGNING BELOW LESSEE(S) HEREBY ACKNOWLEDGE(S) READING AND UNDERSTANDING THE TERMS OF THIS AGREEMENT, AND FURTHER ACKNOWLEDGE(S) RECEIVING A COPY HEREOF:**



**Signed by LYNN HAMBOLU**
Thu Mar 4 11:47:18 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177

**Signed by LYNN GEYER**
Thu Mar 4 11:47:19 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

| | | | |
|---|---|---|---|
| Lynn Hambolu *(Resident)* | *Date* | *(Owner/Agent)* | *Date* |



'Parkmerced

# COMMUNITY POLICIES

1. In addition to a **$50.00** handling fee, an accrued late charge will be collected on any returned check. If Lessee gives Manager two checks that are returned for non-payment during the term of the Lease, the future rent payments shall only be made by cashier's check. This policy will be applicable throughout the balance of either the initial term or any renewal or extension thereof.

2. Please limit your speed within the apartment community to **5 m.p.h.**. Motorcycles and bicycles may be ridden only on driveways and parking lots.

3. The equipment in the bathrooms and kitchens shall not be used for any purposes other than those for which they were constructed. No sweepings, rubbish, rags, disposable diapers, sanitary napkins, tampons, ashes or other obstructive substances shall be thrown therein. Do not place metal, string, grease, coffee grounds, nut shells, glass, olive or fruit pits, corn cobs, paper, wire, bones or non-food in disposal. Lessee shall be held responsible for any repairs or damage resulting from the misuse of such equipment and shall reimburse Manager for necessary expenses incurred in the repair of such equipment. Portable washers or dryers that are not approved in writing by the Manager are prohibited.

4. Lessee shall not make or permit any noise, or engage in or permit any other conduct that disturbs or offends other Lessees or neighbors. Special consideration must be exercised **between the hours of 10 pm and 8 am**. Lessee must comply with the directions of Owner and Owner's determination shall be final. Lessee is responsible for ensuring that disturbing noises are not caused by Lessee's family, guests or invitees. Social gatherings of Lessee and their guests are welcomed and encouraged provided that such gatherings do not become loud, boisterous, or generally objectionable, as judged in Owner's sole discretion, so as not to interfere with the right of quiet enjoyment of other Lessees and neighbors. Hosting a loud, boisterous party in violation of this rule may lead to Lessee's eviction.

5. There may be card-operated laundry facilities located on the property. Please report machines which are not operating properly to the office. Washers and dryers can be dangerous, therefore, no one should play in the laundry facilities. Please do not use the laundry trash dispensers for your household trash. We appreciate your help in keeping our laundry facilities clean.

6. Trash and recycle containers are provided for each apartment. These containers are provided for your convenience. Do not place trash on the ground if your trash containers are full as any trash outside of the provided containers will NOT be picked up by the trash company. Do not use park trash containers for your household trash. For household trash, containers are picked up at the curb each Friday. The date of trash pick-up is subject to change. Residents are responsible for removing their trash and recycling containers from the curb within 24 hours of pick-up. They should be placed in your garage or in a location not visible from the street. Please do not place containers in a walkway or a place that will disturb your neighbors. Littering (trash, paper, and cigarette butts, cans, etc.) in or around the apartment community is not permitted. All areas visible to the public including patios in the control of Lessee must be maintained in a clean and orderly manner, free of the following items, but not limited to: trash, boxes, debris, storage containers, excessive plants, bicycles, toys, tires, and appliances. These areas must be maintained so as not to create a visible or other hazard whatsoever.

7. The use of any charcoal burner, liquid petroleum gas fueled or any other open flame cooking device are prohibited in tenant's unit or on their patio/balcony.

8. No unnecessary loitering in the management office, amenity areas or parking areas.

9. Skateboards, motorcycles, bicycles and similar vehicles may not be stored in entry ways or under stairs. Motor vehicles must be parked on the street, in a driveway, or in a garage. NO and vehicle shall be parked on any sidewalk, pathway, or walkway designated for pedestrian use; or any unpaved area including lawn, landscaped areas, and trails unless prior authorization is received from all local law enforcement. All bicycles can not be parked in such a way as to be a hazard to vehicles or pedestrians.

10. All residents moving into the a tower must move in through the designated basement area. Should Tenant move in through the lobby, Tenant shall be responsible for any damage caused by the move. Said damage shall be assessed by Owner and passed onto Tenant for reimbursement. This is a material leasehold covenant. In addition, any furniture left behind shall be removed by Owner at Tenant's cost.

**Signed by LYNN HAMBOLU**
Thu Mar 4 11:47:32 AM PST 2010
Key: 4E34DDFC; IP Address: 173.11.64.177

**Signed by LYNN GEYER**
Thu Mar 4 11:47:34 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

| Lynn Hambolu *(Resident)* | Date | *(Owner/Agent)* | Date |

'Parkmerced

# ADDENDUM TO LEASE AGREEMENT

Addendum to lease dated: <u>March 4, 2010</u> Apt. #<u>24040</u>

Between Resident(s): <u>Lynn Hambolu</u>

And Landlord: <u>Parkmerced Investors Properties, LLC dba Parkmerced</u>

RE: Risk Free Rental Terms

Landlord hereby waives termination fee if resident involuntarily loses his/her job during the term of this lease agreement. All eligible parties will be required to provide verification from the employer that states the Employee/Resident's employment has been terminated involuntarily. This information will need to be provided on company letterhead along with a contact and phone number to the Human Resources Department to verify information verbally.

To be eligible for this program, the Resident must fulfill a 30-day written notice, and must be current with all rental amounts due through the date of move-out. Also, apartment must be left in good condition with no damages, or damages will become due and payable to avoid further collections.

 **Signed by LYNN HAMBOLU**
Thu Mar 4 11:47:38 AM PST 2010
Key: 4E34DDPC; IP Address: 173.11.64.177

**Signed by LYNN GEYER**
Thu Mar 4 11:47:40 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

| | |
|---|---|
| Lynn Hambolu *(Resident)*     *Date* | *(Owner/Agent)*     *Date* |



'Parkmerced

# MOVE OUT/REPLACEMENT CHARGES

This document is incorporated into and shall become a part of the Lease Agreement by and between **Parkmerced** and

| Resident Name(s) |
|---|
| Lynn Hambolu |

| Apartment Address |
|---|
| 22 Grijalva Drive #24040, San Francisco, CA 94132 |

**SUMMARY OF ESTIMATED MOVE OUT CHARGES:**

| | STUDIO | 1 BEDROOM | 2 BEDROOM | 3 BEDROOM |
|---|---|---|---|---|
| Pest Control | $25.00 | $35.00 | $40.00 | $50.00 |
| Bathroom Pedestal sink | $227.80 | $227.80 | $227.80 per | $227.80 per |
| Carpet Replacement | $1,000.00 | $1,120.00 | $1,400.00 | $2,300.00 |
| Carpet Replacement (renovated) | $1,500.00 | $1,739.64 | $2,680.64 | $3,629.72 |
| Carpet Shampoo | $114.00 | $123.00 | $154.00 | $215.00 |
| Kit. or Bath.vinyl Floors | $319.00 | $345 to $510 | $345 to $675 | $510 to $840 |
| Kit. or Bath.Tile Floors (renovated) | Actual cost | Actual cost | Actual cost | Actual Cost |
| Kitchen Counter | Actual cost | Actual cost | Actual cost | Actual Cost |
| Full Paint | $591.20 | $591.20 to $665.10 | $812.90 to $886.80 | $1108.50 to $1182.40 |
| Full Paint (renovated) | $1,274.00 | $1565.00 to $1665.00 | $1861.00 to $2175.00 | $2310.00 to $2875.00 |
| Partial Paint | $300.00 | $332.55 to $406.45 | $406.45 to $443.40 | $554.25 to $591.20 |

**REPLACEMENT/REPAIR CHARGES:**    Should replacement of damaged or missing items be necessary or repairs made in the apartment, the following minimum charges will be assessed, labor included. Items not included on the list will be billed at actual cost.

| ITEM | COST | ITEM | COST | ITEM | COST |
|---|---|---|---|---|---|
| Window Coverings - Labor $35 per hr | Actual Cost | Interior Doorknob | $51.43 | Smoke Detector | $45.95 |
| Garbage Disposal | $165.15 | Dining Room - Ceiling Fan | $132.46 | Switch Plate | $37.00 |
| Range Knobs | $15.00 ea. | Light Fixtures - Vanity | $67.84 | Mirrors | $50.00 |
| Cabinet Handles | $36.54 or $51.43 | Light Fixtures - Hallways | $48.46 | Bathroom Faucet | $109.52 |
| Dishwasher Rack | $34.00 | Light Bulb Replacement - Bathroom | $10.00 ea. | Shower Curtain Bar | $67.31 |
| Kitchen Faucet | $125.56 | Light Bulb Replacement - Kitchen | $15.00 ea. | Medicine Cabinet | $68.94 or $144.49 |
| Appliances | Actual Cost | Mall Box Lock | $45.00 | Toilet Seat | $7.00 |
| Bi-fold Closet Door | $150.00 | Re-Key Lock | $150.00 | Soap Holder | $44.30 |
| Interior Door | $1,000.00 | Stairwell Carpet Replace | $295.44 | Toilet Paper Dispenser | $49.50 |
| Entry Door | $1,200.00 | Kitchen Cabinets Repaint | $300.00 | Towel Bar | $53.00 |
| Patio Door | $1,100.00 | Wood Floor Refinish | $1200 to $1600 | Tub Resurfacing | $320 to $600 |

**OTHER CHARGES:**    Labor Charges and supply costs will be assessed for trash removal, doors, doorframes, power devices, shelving, heat registers, removing contact paper, mirror tiles, wallpaper and any other miscellaneous repairs or cleaning cost incurred.

| ITEM | COST | ITEM | COST | ITEM | COST |
|---|---|---|---|---|---|
| Bathroom Cabinets/med cab cln. | $15.85 per | Dishwasher cln. | $30.75 | Stairwell carpet shampoo | $92.25 |
| Bathroom Floor cln. | $30.75 per | Oven/Range cln. | $30.75 | Wall Paper Removal | $74.90 per hr |
| Bathtub cln. | $30.75 per | Refrigerator cln. | $30.75 | Touch Up Paint | $74.90 per hr |
| Shower wall/Tile | $30.75 per | Sinks: Kitchen | $15.85 per | Trash/Furniture Removal | $30.75 per hr |
| Blinds cln. | $30.75 per | Bathroom | $15.85 per | Wall Cleaning | $30.75 per hr |
| Commode cln. | $30.75 per | Janitor Hourly Rate | $30.75 | Window Cleaning | $30.75 per hr |
| Mirror cln. | $15.85 | Plumber Hourly Rate | $82.16 | Shell paper Removal | $30.75 per hr |
| Kitchen Floor cln. | $30.75 | Handyman Hourly Rate | $35.00 | | |
| Light Fixtures cln. | $15.85 per | Carpenter Hourly Rate | $85.00 | | |
| Stairwell Full Paint | $300.00 | Painter Hourly Rate | $74.90 | | |

**PAINT:**    Management shall assess charges against the security deposit for the painting of walls. A pro-rated charge will be assessed for normal wear and tear for painting based on the following charges.

1-12 Months - Full Cost of Refurbishment or hourly rate for touch up.

13-36 Months - Total amount of fullpaint will be prorated for the remaining months of occupancy.

Total will be based on the 3 year life span of paint.

*Modified walls or color changes are not depreciable, resident must bring back to original move In condition or full paint charges will apply.

| Carpet estimated life span | Paint estimated life span |
|---|---|
| 5 years | 3 years |

Nothing herein shall be constructed as a limitation upon landlord's right to pursue cause for damages not specifically listed above.

**Signed by LYNN HAMBOLU**
Thu Mar 4 11:48:03 AM PST 2010
Key: 4B34DDFC; IP Address: 173.11.64.177

**Signed by LYNN GEYER**
Thu Mar 4 11:48:04 AM PST 2010
Key: B16619AB; IP Address: 173.11.64.177

Lynn Hambolu *(Resident)*                                    Date        *(Owner/Agent)*                                    Date

Parkmerced

# RECREATIONAL FACILITY REGULATIONS

In consideration of the right to use the recreation facilities, the Lessee agrees that neither the management or owner of the community, nor their agents, managers, employees, assigns and successors shall be liable for claims, demands, costs or expenses arising out of any personal injury, property damage or loss which may be sustained by the Lessee or any persons whom the Lessee allows to use the facilities, whether or not caused in whole or in part by the active or passive actions of the management or owner of the community, its agents, managers, employees, assigns and successors, or any cause whatsoever. In this regard, the Lessee hereby agrees to assume all risk of such occurrences and to hold owner harmless and indemnify and defend same against any and all claims, liabilities, damages, liens and expenses (including without limitation reasonable attorney's fees arising directly or indirectly from any such occurrences). Our amenities are provided to please our Lessees. Please exercise care when enjoying the recreation facilities, as Management is not responsible for physical injuries that result from the use of our courts and facilities. Any damages to any of the recreational facilities caused by Lessee, Other Occupants or their guests will result in Lessee being responsible for the cost of the damages. *Take caution to lock Common Area doors on your way out.* No pets allowed in any of the Recreational Facilities. Thank you for your cooperation in connection with the below regulations and we hope you will understand that such rules are for the sole purpose of increasing the enjoyment of our Lessees.

| BUSINESS CENTER |
| --- |

Certain **PARKMERCED INVESTORS PROPERTIES, LLC DBA PARKMERCED** community locations have been equipped with business centers for use of the Lessees and Other Occupants.

A. Business center hours are set by Lessor and are subject to change.

B. No food or beverages will be allowed in the business center.

C. Please treat the equipment correctly. If assistance is needed in operation or for repairs, contact the management office.

D. Excessive noise and unruly conduct in the business center is prohibited.

Any person in violation of these rules will be asked to vacate the area immediately. Failure to adhere strictly to the above rules and regulations is acknowledged as grounds for suspension of Fitness Center privileges or termination of the tenancy in accordance with the State law.

| FITNESS CENTER |
| --- |

All persons using Fitness Center do so at their own risk. The Lessor does not assume responsibility for accidents or injury.

A. Fitness Center is for the use of Lessees and Other Occupants only.

B. No food or alcohol is permitted.

C. No boisterous or unruly conduct is allowed in the Fitness Center.

D. Excessive noise is prohibited.

E. Fitness Center equipment and supplies are not to be removed from the Fitness Center at anytime.

Any person in violation of these rules will be asked to vacate the area immediately. Failure to adhere strictly to the above rules and regulations is acknowledged as grounds for suspension of Fitness Center privileges or termination of the tenancy in accordance with the State law.

| BILLARD & GAME ROOM |
| --- |

Lessee is responsible and must take full responsibility for borrowed pool cues, balls and chalk. Any damage, theft or loss will be replaced in full to management. In addition, Lessee, Other Occupants and their guests must comply with the following rules and regulations:

A. Guests must be accompanied by a Lessee or Other Occupant.

B. Players must be able to properly use the cue and not cause it, or the pool table or balls to be damaged thereby.

C. Use of the tables is limited to normal billiard and pool games only. No gambling allowed.

D. No alcohol or food is allowed.

E. No smoking.

F. No music (only supplied by clubhouse).

G. If someone is waiting, relinquish billiard equipment after one game.

H. Please re-set balls and put cues in racks when done.

15



·Parkmerced

# SECURITY DEPOSIT AGREEMENT

This Agreement is.made this day, **March 4, 2010**, by and between **Parkmerced** (hereinafter referred to as "Lessor"), Lessor of the apartment complex in which the "Premises", as hereinafter defined, are located, acting pursuant to express written authority given by the owner of such apartment complex, and **Lynn Hambolu** (hereinafter referred to as "Lessee"), in connection with the Apartment Lease Agreement (the "Lease") between Lessor and Lessee for: **Parkmerced** (the "Premises").

1. **Security Deposit.**   Lessor hereby acknowledges receipt from Lessee of the sum of: **$0.00** (Security Deposit) which represents the security deposit payment under the Lease, which shall hereinafter be defined as "Security Deposit". Lessor will hold the Security Deposit for the faithful performance by Lessee of his/her obligations under the Lease, including payment of rent, and cleaning and repair of the Premises after its surrender.

2. **Refund of Security Deposit.**   Lessor shall deduct from the Security Deposit all monies expended as a result of any breach of the lease or this agreement, including but not limited to the following:

   A. Vacate completely the entire Premises by Lessee on or before the date specified in the required written **30 day** move-out notice.

   B. Expiration of the term of the Lease, or termination or cancellation of the Lease in accordance with the express provisions thereof.

   C. Payment by Lessee of all rental required under the Lease, up to and including the date of expiration or termination of the term of the Lease, or the full move-out notice period, whichever is longer.

   D. The Premises, including all kitchen appliances (refrigerator, oven, and range) and including all baths, closets, storage areas, patios/balconies, etc. have been thoroughly cleaned, so as to be in the same condition as they were in on the commencement date of the term of Lease, normal wear and tear excepted.

   E. No defects or damage to the Premises, whether caused by Lessee, pets, or otherwise, unless shown on a written list of damages and defects signed by Lessee at the commencement of the Lease term.

   F. Observance and performance by Lessee of all of the other covenants and obligations to be kept or performed by Lessee under the Lease up to and including the date of expiration or termination of the Lease term.

   G. Observation and performance by Lessee of all rules and regulations to be kept and performed by Lessee under the Lease, including, without limitation, those rules and regulations pertaining to pets.

   H. **LESSEE has given LESSOR thirty days written notice prior to the date of expiration or termination of the term of the Lease.**

   I. Lessee has provided Lessor with a written copy of the forwarding address of Lessee.

3. **Deductions.**   Within twenty-one (21) days after Lessee has vacated the Premises, Lessor shall furnish Lessee with an itemized written statement of the basis for, and the amount of, any security received and the disposition of such security to Lessee.

4. **Move-Out Procedures.**   When Lessee moves out of the Premises, an inspection of the condition of same shall be made after all of the personal effects of Lessee have been removed. Lessee should accompany Lessor during said inspection to help resolve any problems that may arise. Failure of Lessee to do so shall constitute a concurrence by Lessee in Lessor's assessment of charges for damages or cleaning. After inspection by Lessor, appropriate charges will be assessed by Lessor for any missing items; damages or repairs to the Premises, or its contents (normal wear and tear excepted) with the exception of those items listed on the Move-In/Move-Out Inspection Report attached to this agreement; insufficient light bulbs; scratches, burns, or holes in the walls, doors, floors, draperies, carpets and/or furniture; and for cleaning the Premises (including all kitchen appliances). Lessee shall be charged for each unreturned key (mail-box key), and·charged for replacing locks if all door keys to the Premises are not returned to Lessor.



Parkmerced

# RESIDENT INFORMATION SHEET

Date: <u>March 4, 2010</u>

| RESIDENT(S) OF RECORD | |
|---|---|
| *(Please complete one section for each person named as resident)* | |
| **GENERAL INFORMATION** | |
| Name: Lynn Hambolu | |
| Current Address: 22 Grijalva Dr. | City, State, ZIP: San Francisco CA 94132 |
| Telephone: | Cellular Telephone: |
| Employer: | Work Telephone: |
| E-Mail Address: tavidiva@hotmail.com | |
| **EMERGENCY CONTACT INFORMATION** | |
| Name: | Relationship: |
| Current Address: | City, State, ZIP: |
| Telephone: | |

| OTHER OCCUPANTS | |
|---|---|
| Name: | Date of Birth: |
| Name: | Date of Birth: |

19



Parkmerced

# UTILITY PROVIDER INFORMATION

Community: **Parkmerced**                    Apartment Address: **22 Grijalva Drive #24040, San Francisco, CA 94132**
Resident(s): **Lynn Hambolu**

The Resident is responsible for notifying the appropriate utility company on or before the move in date for the purpose of placing such utilities in Resident's name. The following utility companies (if applicable) provide service to the apartment address referenced above:

| Service | Company | Contact Number |
|---|---|---|
| Telephone Company Name: | **SBC** | **(800) 310-2355** |
| Electric Company Name: | **P.G.& E.** | **(800) 743-5000** |
| Cable Television Company Name: | **Rick Barwick at Comcast** | **(415) 859-7093** |
| Natural Gas Company Name: | **P.G.& E.** | **(800) 743-5000** |
| Internet Company Name: | **Inquest 1-866-876-3278** | |

```
Signed by LYNN HAMBOLU              Signed by LYNN GEYER
Thu Mar 4 11:49:26 AM PST 2010      Thu Mar 4 11:49:29 AM PST 2010
Key: 4B34DDFC; IP Address: 173.11.64.177   Key: B16619AB; IP Address: 173.11.64.177
```

Lynn Hambolu *(Resident)*                    Date         *(Owner/Agent)*                              Date

21



On-Site.com

23

Parkmetered.

| 13. 3rd Bedroom | Move-in Inspection | Preliminary Move-Out Inspection | Inspection | Final Est. Cost to clean or repair | | 14. 3rd Bathroom | Move-in Inspection | Preliminary Move-Out Inspection | Inspection | Final Est. Cost to clean or repair |
|---|---|---|---|---|---|---|---|---|---|---|
| Doors | | | | | | Ceiling | | | | |
| Walls | | | | | | Walls | | | | |
| Ceiling | | | | | | Tile/Grout | | | | |
| Window Coverings | | | | | | Cabinets/Shelves | | | | |
| Window | | | | | | Flooring | | | | |
| Closets | | | | | | Doors | | | | |
| Floor Coverings | | | | | | Tub/Shower | | | | |
| Electrical Fixtures | | | | | | Drain | | | | |
| Light Bulbs | | | | | | Window(s) | | | | |
| | | | | | | Toilet | | | | |
| | | | | | | Sink/Faucet | | | | |
| | | | | | | Electrical Fixtures (e) Bulbs | | | | |
| | | | | | | Mirror/Med Cab | | | | |

| 15. Balcony/Patio | | | | | | 16. Mechanical | | | | | | 17. Garage/Car Port | | | | | | 18. Storage | | | | | | 19. Accessories | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | | | | | Heater/Furnace | | | | | Floor | | | | | Cleaned Out | | | | | Apartment Keys | | | | | |
| Trash Removal | | | | | AC Filter | | | | | Parking Space | | | | | | | | | | Mail box Keys | | | | | |
| Other | | | | | Smoke Detector(s) | | | | | Other | | | | | | | | | | Fobs | | | | | |
| | | | | | Thermostat | | | | | | | | | | | | | | | Storage | | | | | |
| | | | | | Other | | | | | | | | | | | | | | | Facility Keys | | | | | |

**General Comments:**

| | | | |
|---|---|---|---|
| Clean Carpet | ☐ YES · ☐ NO | $ |
| Replace Carpet | ☐ YES · ☐ NO | $ |
| Full Clean | ☐ YES · ☐ NO | $ |
| Full Paint | ☐ YES · ☐ NO | $ |

| Preliminary Move-Out Inspection | | Preliminary Inspection By _____ Date | Final Inspection By _____ Date |
|---|---|---|---|
| Total Estimated Costs of repairs, cleaning, and replacements. | | | |
| Preliminary Estimate | $ | | |
| Final Charges | $ | | |

Note: This estimate does not include any additional amounts due under the terms and conditions of the lease. Such amounts can include but are not limited to rent, late fees, utilities, concessions, etc.

**MOVE-IN:**

_____ _____
(Resident)                              Date

**FINAL INSPECTION**

_____ _____
(Resident)                              Date

Move-In: The resident accepts the premises with the contents as listed on this form at the time of move-in. The resident assume responsibility for surrendering the premises to the agent in the same condition as listed on this form at the time of move-out, exclusive of wear and tear.

Move-Out: The resident accepts the premises with the contents as listed on this form at the time of move-out, excluding normal wear and tear.

_____ _____
(Resident)                              Date

Move-Out: The security deposit will be used for legal deductions itemized in this statement that are corrected by the resident prior to the termination of the tenancy or that were not identified due to the presence of the Resident's possessions during the time of the initial inspection. It also allows Owner/Agent to use the security deposit to correct any damages that occur to the apartment/property between the time of the initial inspection and the termination of tenancy.

According to State Law: Any security shall be held by the landlord for the tenant who is party to the lease or agreement. The claim of a tenant to the security shall be prior to the claim of any creditor for the landlord. (Civil Code Section 1950.5 (d) ) . According to Civil Code Section 1950.5, "security" means any payment, fee, deposit or charge, including, but not limited to, any payment, fee, deposit, or charge, except as provided in Section 1950.6, that is imposed at the beginning of the tenancy to be used to reimburse landlord for costs associated with processing a new tenant or that is imposed as an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following: (1) The compensation of a landlord for a tenant's default in the payment of rent. (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant. (3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy. The amendments to this paragraph enacted by the act adding this sentence shall apply only to leases for which the tenant's right to occupy begins after January 1, 2003. (4) To remedy any future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement.



## SUREDEPOSIT
## CALIFORNIA ENROLLMENT &
## BOND ACKNOWLEDGEMENT
License Number 0D35043



Company **ALLRESCO**
Management ID **ARC157**

## PLEASE READ THE FOLLOWING BEFORE SIGNING:

**I intend to be legally bound, and I understand and voluntarily agree that:**

I am enrolling on a bond that Bankers Insurance Company (Surety) issued for the benefit of the apartment community named on page two. **The premium that I am paying for the Bond is not a security deposit, and I will not receive the premium back at the end of my lease. Moreover, this bond is not liability or other insurance, and thus does not relieve me of any responsibilities I have under the lease, including responsibility for physical damage to the property or for unpaid rent.**

The bond is for the amount listed after "Bond Coverage Amount" on page two. The bond provides coverage for damages that I may be responsible for under the lease and under law, including physical damage to the apartment (beyond normal wear and tear) or for any unpaid obligations under my lease agreement, such as unpaid rent or fees ("Covered Damages"), up to the Bond Coverage Amount. **Therefore, if the apartment community makes a claim for Covered Damages, and provided the apartment community first complies with Civil Code § 1950.5, Surety will be obligated to pay the claim for Covered Damages, including any collection expenses, court costs, and attorney fees, but not to exceed the Bond Coverage Amount. I will then be obligated to reimburse Surety the amount of the claim.**

Nothing in this agreement limits the apartment community from first applying any money that I have on deposit with the apartment community to pay the claim. Moreover, if Surety pays a claim on my behalf, it will then seek to collect reimbursement from me. If this happens, subject to all applicable legal limitations, I authorize anyone to furnish Surety (or its employees or agents or assigns) any information that will assist Surety in collecting the money I owe. Moreover, the apartment community and the Surety are not affiliated in any manner, and the apartment community is not responsible for the actions that Surety takes during any collection efforts. I understand that if I fail to pay money that I owe to Surety as a result of my obligations under this bond: a) my credit rating may get worse; b) I might have trouble renting an apartment; and c) I might have trouble getting insurance coverage.

## THIS IS PART OF THE AGREEMENT. PLEASE READ CAREFULLY

1) This constitutes our entire agreement, which supersedes all prior agreements and understandings pertaining thereto, and I am solely relying on what is written in this document, and not relying on any oral representations or promises.

2) The parties hereto shall have all remedies for breach of this Agreement available to them provided by law.

3) This agreement is not intended to be for the benefit of and shall not be enforceable by any person who or which is not a party hereto.

4) Neither Party may assign or delegate any of its rights or obligations under this agreement, although Surety may assign this agreement and any resulting judgment, for purposes of collection.

5) I understand that Surety and apartment community are independent and unaffiliated companies, and, that they are therefore not agents, joint venturers, partners, parents, or subsidiaries of one another. Therefore, I understand that the apartment community is not responsible for the conduct of the Surety, and the Surety is not responsible for the conduct of apartment community.

6) I am enrolling in the bond program voluntarily, and not under the pressure, influence or recommendation of any person. I fully understand that I don't have to enroll in this program. But after considering the matter, I choose to enroll because I believe that it makes sense for me to do so.

**7) I have had sufficient opportunity and time to review this agreement.**

**RESCISSION RIGHTS: Within five (5) Calendar Days** of signing this Bond Enrollment Form, I may rescind this bond enrollment for a full refund, PROVIDED I post a security deposit with the apartment community in cash or by cashier's check in the amount that it deems satisfactory, and PROVIDED that I also submit to SureDeposit both a written notice of rescission and satisfactory proof that I have posted the security deposit required by the apartment community.

## THIS IS OUR ENTIRE AGREEMENT, AND I AM NOT RELYING ON ANY ORAL PROMISES OR STATEMENTS.

ARC157

# FREQUENTLY ASKED QUESTIONS

**What is SureDeposit?**
The SureDeposit program is based on a simple concept: rather than pay a full security deposit to a property company, residents may choose to pay a one-time premium to SureDeposit. When a resident elects to use the SureDeposit program, he signs a surety bond that replaces (or supplements) a traditional security deposit. SureDeposit guarantees the performance of a resident according to the terms of a lease agreement signed with the property company. The resident promises to return the unit in good condition, and to satisfy all rental and financial obligations. If the resident does not meet his obligations, he is required to reimburse SureDeposit up to the coverage amount of the bond, and to reimburse the property company for outstanding obligations in excess of the coverage amount of the bond.

**What is a surety bond?**
A surety bond is a written agreement that usually provides for monetary compensation in case the *principal* (see below for definition) fails to perform the acts as promised. A surety bond is created whenever one party guarantees performance of an obligation by another party. There are three parties to the agreement, as defined by the Surety Association of America (www.surety.org).

    The **principal** is the party that undertakes the obligation. (The **Resident**)
    The **surety** guarantees the obligation will be performed. (**SureDeposit**)
    The **obligee** receives the benefit of the bond. (The **Property Company**)

**How do I sign up?**
Once you complete the SureDeposit enrollment form and pay the required one-time, non-refundable premium to SureDeposit, you are enrolled when your new lease is approved.

**What happens at the end of my lease term if I have honored all the terms and conditions of my lease?**
You simply move out without any further obligations.

**What happens upon move-out, if I owe rent or fees, or have caused damage to my apartment?**
If you have not fulfilled your lease obligations you will be required to reimburse SureDeposit for any damages, loss of rent and related expenses, such as legal and collections fees that SureDeposit may have paid on your behalf. If your obligations exceed what SureDeposit has paid on your behalf you may also be required to reimburse the property company for the excess.

**How long is the property company covered for by me paying this one premium today?**
Coverage is purchased for the benefit of the property company and is intended to remain in force for the duration of your tenancy. However, if your apartment community is sold, we cannot warrant that the new owner will keep the bond in force, and you may be required to post a security deposit upon lease renewal in accordance with applicable landlord/tenant law.

**What happens if I move to another apartment in this apartment community?**
Typically the SureDeposit coverage can move with you to the new unit in this apartment community or any other community your property company has participating in the SureDeposit program. Check with your leasing agent or community manager for your community's specific guidelines.

**Are there any other costs for SureDeposit?**
No – your one-time premium is all you pay if you have fulfilled your lease obligations.

**Do I get my premium back at the end of my lease?**
No – your premium is non-refundable.

**If I do owe fees, rent, or damage expense, can I pay it directly to the apartment community?**
Yes. That is the best thing to do. Once the outstanding monies are paid to the apartment community, no claim will be filed and you will have no obligation to the Surety.

**Is SureDeposit right for me?**
This is a personal decision for you, as only you can determine the importance of freeing up the cash that would have been tied up in a security deposit. Because the premium for SureDeposit is paid only once, the longer you plan on staying in your apartment, the better the deal is for you.

For more information, please go to www.suredeposit.com/residents, or call 1 877 531 SURE (7873).
Offered in California by SureDeposit Insurance Agency, LLC    License: 0D35043

UC**SF** Medical Center

UC**SF** Benioff Children's Hospital

July 31, 2012

Lynn Gavin
1230 Market St
#4
San Francisco CA 94102

**UCSF Family**
**Medicine**
**Center at**
**Lakeshore**
1569 Sloat
Blvd, Ste 333
San Francisco
CA 94132-1255
Phone:
415-353-9339
Fax:
415-353-3450

Regarding:    Name: Lynn Gavin
              Date of Birth:

To Whom it May Concern:

I am the primary care physician for Ms. Gavin.  She has a pet rabbit, Sir
Daniel, which I believe helps her greatly with a chronic medical condition.  I
am writing to request that Sir Daniel be designated as a service animal for
Ms. Gavin.

If you have any questions or concerns, please don't hesitate to call the
practice or message us through UCSF MyChart, our new patient portal.

Sincerely,

Amiesha S. Panchal, MD

3.



**U.S.Department of Housing and Urban Development**
San Francisco Regional Office - Region IX
600 Harrison Street
San Francisco, California 94107-1300
www.hud.gov
espanol.hud.gov

JAN 2 7 2012

To Anonymous:

The Veterans Administration Office of Inspector General received your letter dated December 25, 2011, regarding your inquiry about possible profiling and fraudulent rental agreements by Parkmerced Management Company.

Our office contacted the San Francisco Housing Authority (SFHA) and asked them to investigate the issue and provide a status. SFHA summarized the report as follows:

A.   Utilities

The Parkmerced Management Company is using a R.U.B.S. system to charge their tenants for water and garbage. The R.U.B.S. system charges all tenants a fee for utilities. The fee is based on the square footage of the unit. This is a common practice when units are not individually metered. The amounts charged for these utilities are appropriate as they match the utility allowance published by the SFHA.

B.   Evictions

At one time there were multiple evictions pending at Parkmerced for non-payment of utilities, but those cases have been resolved by Parkmerced. Parkmerced's staff tried to accommodate SFHA's clients and settled a lot of the outstanding balances for pennies on the dollar. The allegation that over 200 households participating in the voucher program were evicted is not accurate.

Although the SFHA receives funding from HUD, it is governed by the locally-appointed Board of Commissioners under state law and, as such, HUD is not involved in the SFHA's daily operations or decisions. If a tenant disagrees with an action taken or decision made by the SFHA, he/she must make his/her complaint or grievance to them directly for resolution in accordance with their locally set policies and procedures, local and state laws.

4

I hope this information is helpful to you. If you need additional assistance, please contact Henry A. Alvarez, Executive Director, of the SFHA, at (415) 715-3122.

Sincerely,

Melina Whitehead
Acting Director
Office of Public Housing

cc:
Henry Alvarez
1815 Egbert Avenue
San Francisco, CA 94124



U.S. Department of Housing and Urban Development
San Francisco Regional Office - Region IX
600 Harrison Street, 3rd Floor
San Francisco, California 94107-1300
www.hud.gov
espanol.hud.gov

**MAY 1 8 2012**

Lynn Gavin
22 Grijalva Drive
San Francisco, CA 94132

Subject: Housing Complaint
   Mail Control No.: 2012-AHFD-EXEC-02284

Dear Ms. Gavin:

   Thank you for your May 15, 2012 letter to Secretary Shaun Donovan in which you reported a complaint of housing discrimination against your housing provider, the San Francisco Housing Authority and HUD, in violation of the American with Disabilities Act with regard to the Parkmerced Redevelopment Project.

   As you may be aware, HUD's Office of Fair Housing and Equal Opportunity (FHEO) enforces federal fair housing laws which prohibit housing discrimination on the bases of race, color, religion, national origin, sex, familial status and handicap. Your complaint is being referred to FHEO's intake branch for further assessment to determine if your allegations are jurisdictional under federal fair housing laws. You will be contacted directly or you may call Paul Smith, Intake Branch Chief, at (415) 489-6552 or (800) 347-3739 ext. 6552.

   I hope you find this information helpful. If you have further questions regarding this matter, please contact the FHEO Regional Director, Charles Hauptman, at (415) 489-6536. Your request has been assigned a tracking number which you may find useful in contacting us regarding your request. The tracking number for your request is 2012-AHFD-EXEC-02284.

Sincerely,

Ophelia B. Basgal
Regional Administrator

cc:
FHEO Intake Branch

5

, 6 ,

September 26, 2011

Helen R. Kanosky
General Counsel
US Department of Housing and Urban Development
451 – 7th Street., S.W. - Room 10110
Washington, DC 20410

RE:   Urgent Possible Violations of Subsidized Tenants Rights (Profiling)

Dear General Counsel Kanosky:

I am a tenant who wish to remain anonymous at this time. I ask that you please respect my request otherwise I will not be able to communicate with you. In the past prior to the new Executive Director I have experienced reprisal from the San Francisco Housing Authority (SFHA) and I do not want to experience that again.

I am a tenant with a Section 8 housing voucher who has multiple disabilities. As an advocate I have begun researching the possibility that the rights of the tenants at the apartment complex where I reside and particularly Section 8 tenants have been violated under the City ordinance regarding a development agreement project. Tomorrow evening there is continuance hearing regarding these issues that I have raised and I would like to contact you with that information after the hearing. A ruling may be given immediately following the hearing or it can be mailed.

The hearing is called the Sunshine Ordinance which consist of local laws that are connected to some state and federal laws. Tomorrow hearing's is a continuance from the hearing last month to give the respondents who are elected officials the opportunity to respond. Last month there was a ruling in favor of the residents. The next day after the hearing there was a 3-day pay or quit notice on my door although my was paid for the month.

Unbeknownst to the San Francisco Housing Authority the apartment complex where I reside Parkmerced which is owned by Stellar Management (Larry Gluck) and Fortress Credit Group (Daniel Mudd) had submitted plans for a demolition projected that would redevelop the property. In a very contentious vote 6/5 the project was approved by City Hall. This is a huge development project (152 acres) and they have publicly stated that they want to receive low interests loans and grants from the government to get started.

The San Francisco Civil Grand Jury investigative report concluded issued in May 2011 concluded that if the City of San Francisco continued with the development agreement the way it was written the citizen residents statutory rights would be violated. Thus putting us at "risk" to loosing our rent control apartments. The developers have considerable influence over City Hall which is why I have written to you. On behalf of some residents and myself we are hoping that an investigation is conducted from your office.

6

On September 20, 2011 Stellar Management sent all of the Section 8 tenants a 3-day pay or quit notice regarding utilities. Even tenants who did not owe anything. The main issue is payment for water. Some tenants were told to ignore the water bill because they were subsidized tenants. Although it is in the contract that the tenants should pay for water it was not disclosed that no water meter exist ahd that they estimate the bill. I can attest to the fact that no water meters exist for residential use on the property. I made inquires to the Dept of Water regarding this issue. This also another violation of the City Ordinance and possible state laws.

I moved into the apartment complex about a year in a half ago and the paperwork submitted to City Hall for the demolition began two years prior to me renting the apartment. It was not disclosed to the SFHA or new residents that they wanted to demolish the apartment complex. Around the same time that they began to rent to people with Section 8 vouchers for the first time ever. Also it was around this time that Stellar Management was going to file bankruptcy. I think with the approval of the development agreement they no longer want low-income tenants because they are going to build and sell million dollar condos. The Section 8 tenants will not be allowed to return to the new development because the rents will be too high.

It is my hope that an investigation will be launched from your office because there is a possibility that the City of San Francisco has violated subsidized tenants rights therefore, it should not be investigated by employees of the San Francisco Housing Authority because they could face reprisal upon discovering the truth. I will contact you again when a decision has been reached by the hearing. Another reason that I am remaining anonymous is out of concern for the safety of my family and myself.

Again please respect my confidentiality and I will contact you again.

Thank you,

Anonymous

# THREE DAY NOTICE TO PERFORM COVENANT OR QUIT

*THIS THREE DAY NOTICE SUPERSEDES ANY THREE DAY NOTICE PREVIOUSLY SERVED UPON YOU.*

*To* Lynn Hambolu, an individual, and **ALL OTHER LEASEHOLDERS IN POSSESSION:**

Premises at Parkmerced to which this NOTICE relates:

**22 GRIJALVA DR.**
**San Francisco, California 94132**

Including all parking spaces, common, and storage areas associated therewith (hereinafter referred to as the "subject premises")

**YOU ARE HEREBY NOTIFIED** that the written lease agreement and all addendums thereto, including the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges* (hereinafter referred to as the "Lease Agreement"), under which you hold possession of the subject premises, requires performance on your part of the following leasehold covenants, contained within the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges,* which you have recently failed to perform:

> **Lessee shall pay for water and sewer service based on an allocation formula....**
> **The water and sewer bill will be sent to Lessee by a third party billing provider....**
> **Lessee shall also be billed, and shall pay, for trash service by the third party billing provider....**
> **Lessee must make payment in full to Owner or the third party billing provider of the utility charges prior to the due date listed on each bill....**
> **Failure to pay any of said charges shall be considered a material breach of this Lease and Owner shall have the right to commence legal proceedings against Lessee and all occupants including but not limited to an unlawful detainer action to recover possession of the premises.**

Parkmerced (hereinafter, the "Landlord") recently discovered that these leasehold covenants are being violated by your failure to pay billed utility charges in the total amount of **$1121.92**.

**PLEASE BE ADVISED** that if the foregoing breach of leasehold covenants is not cured within THREE (3) DAYS after service of this NOTICE upon you (excluding the date of service)

---

**THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT**

1

by reimbursing Parkmerced, by way of a payment made payable to Parkmerced in the amount of $1121.92, you must vacate the subject premises and deliver possession to **WASSERMAN-STERN**, attorneys and agents for the Landlord, located at 2960 Van Ness Avenue, San Francisco, California 94109, who are authorized to receive the same, or legal proceedings may be instituted against you to recover possession of the subject premises, to declare the forfeiture of the Lease Agreement and leasehold under which you occupy the subject premises.

**YOU ARE FURTHER NOTIFIED** that the undersigned does hereby elect to declare the forfeiture of the Lease Agreement under which you hold possession of the subject premises if you fail to timely cure the breach of lease covenants set forth in this NOTICE.

**ADVICE REGARDING THIS NOTICE** is available from the San Francisco Residential Rent Stabilization and Arbitration Board located at 25 Van Ness Avenue, Suite 320, San Francisco, California. You may also call the Rent Board directly at (415) 252-4600.

The Landlord and this NOTICE comply with California Code of Civil Procedure § 1161(3) *et seq.* and the San Francisco Administrative Code (also known as the Rent Ordinance), Section 37.9(a) subsection (2), enacted in 1979, and amended thereafter, in that you as the tenant have violated a lawful obligation or covenant of tenancy.

DATED:  **September 19, 2011**

By:                    DAVID P. WASSERMAN, Esq.,
                       *Attorney and Agent for the Landlord,*
                       PARKMERCED INVESTORS
                       PROPERTIES, LLC

Attorneys and agents for the landlord:
**WASSERMAN-STERN**
Attn.:  David P. Wasserman, Esq.
        2960 Van Ness Avenue
        San Francisco, CA  94109
Tel.:    415/567.9600
Fax:     415/567.9696
Copy filed with:  San Francisco Rent Board

---

**THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT**

2

# THREE DAY NOTICE TO PERFORM COVENANT OR QUIT

*THIS THREE DAY NOTICE SUPERSEDES ANY THREE DAY NOTICE PREVIOUSLY SERVED UPON YOU.*

*To* **Lynn Hambolu**, an individual, and **ALL OTHER LEASEHOLDERS IN POSSESSION:**

Premises at Parkmerced to which this NOTICE relates:

**22 Grijalva Drive
San Francisco, California 94132**

Including all parking spaces, common, and storage areas associated therewith (hereinafter referred to as the "subject premises")

**YOU ARE HEREBY NOTIFIED** that the written lease agreement and all addendums thereto, including the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges* (hereinafter referred to as the "Lease Agreement"), under which you hold possession of the subject premises, requires performance on your part of the following leasehold covenants, contained within the *Utility Addendum: Disclosure of Resident's Financial responsibility for Water, Sewer and Trash Collection Charges,* which you have recently failed to perform:

> **Lessee shall pay for water and sewer service based on an allocation formula....
> The water and sewer bill will be sent to Lessee by a third party billing provider....
> Lessee shall also be billed, and shall pay, for trash service by the third party billing provider....
> Lessee must make payment in full to Owner or the third party billing provider of the utility charges prior to the due date listed on each bill....
> Failure to pay any of said charges shall be considered a material breach of this Lease and Owner shall have the right to commence legal proceedings against Lessee and all occupants including but not limited to an unlawful detainer action to recover possession of the premises.**

Parkmerced (hereinafter, the "Landlord") recently discovered that these leasehold covenants are being violated by your failure to pay billed utility charges in the total amount of

**$1,586.72.**

*first
3-day
notice*

---

## THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT

1

*over*

*Date 8/24/2011*

*8*

**PLEASE BE ADVISED** that if the foregoing breach of leasehold covenants is not cured within <u>THREE (3) DAYS</u> after service of this NOTICE upon you (excluding the date of service) by reimbursing Parkmerced, by way of a payment made payable to Parkmerced in the amount of $1,586.72, you must vacate the subject premises and deliver possession to **WASSERMAN-STERN**, attorneys and agents for the Landlord, located at 2960 Van Ness Avenue, San Francisco, California 94109, who are authorized to receive the same, or legal proceedings may be instituted against you to recover possession of the subject premises, to declare the forfeiture of the Lease Agreement and leasehold under which you occupy the subject premises.

**YOU ARE FURTHER NOTIFIED** that the undersigned does hereby elect to declare the forfeiture of the Lease Agreement under which you hold possession of the subject premises if you fail to timely cure the breach of lease covenants set forth in this NOTICE.

**ADVICE REGARDING THIS NOTICE** is available from the San Francisco Residential Rent Stabilization and Arbitration Board located at 25 Van Ness Avenue, Suite 320, San Francisco, California. You may also call the Rent Board directly at (415) 252-4600.

The Landlord and this NOTICE comply with California Code of Civil Procedure § 1161(3) *et seq.* and the San Francisco Administrative Code (also known as the Rent Ordinance), Section 37.9(a) subsection (2), enacted in 1979, and amended thereafter, in that you as the tenant have violated a lawful obligation or covenant of tenancy.

DATED: **August 24, 2011**

By:           **DAVID P. WASSERMAN, Esq.,**
*Attorney and Agent for the Landlord,*
PARKMERCED INVESTORS
PROPERTIES, LLC

Attorneys and agents for the landlord:
**WASSERMAN-STERN**
Attn.: David P. Wasserman, Esq.
      2960 Van Ness Avenue
      San Francisco, CA 94109
Tel.:  415/567.9600
Fax:  415/567.9696
Copy filed with: San Francisco Rent Board

---

**THREE DAY NOTICE TO PERFORM COVENANTS OR QUIT**

2

Case Manager_____

Client #_____ MO_____



# SAN FRANCISCO HOUSING AUTHORITY
## Section 8 Housing Department
1815 Egbert Avenue · San Francisco, CA  94124 · Phone: (415) 715-3280

## CONTRACT TERMINATION NOTICE

Tuesday, August 07, 2012

Client #935976
Lynn Hambolu
22 Grijalva Dr.
San Francisco CA 94132

Dear Ms. Hambolu:

This is an acknowledgement of the previous notification that you will no longer be receiving Section 8 assistance.

>    Reason: You did not supply the necessary documentation required to determine your eligibility for continued Section 8 assistance.

We will cancel your Section 8 Voucher effective **July 31, 2012**.  You must inform your Landlord of your decision to vacate the property by giving a 30-Day Notice.

**Please be advised that if you need assistance at a later date, it will be necessary for you to reapply for the program during the application period.**

Thank you for your cooperation in this matter.  Should you have questions or concerns, please do not hesitate to contact me.

Sincerely,

*Munclung)r*

Leiroschelle Johnson
Sr. Eligibility Clerk
(415) 715-3144


cc:     client file
        landlord

9



| Case Manager |  |
|---|---|
| Client # | MO |

# SAN FRANCISCO HOUSING AUTHORITY
## Section 8 Housing Department
1815 Egbert Avenue · San Francisco, CA 94124 · Phone: (415) 715-3280

## CONTRACT TERMINATION NOTICE

Monday, August 06, 2012

Client #935976
Lynn Hambolu
22 Grijalva Dr.
San Francisco CA 94132

Dear Ms. Hambolu:

This is an acknowledgement of the previous notification that you will no longer be receiving Section 8 assistance.

Reason: Evicted, non-payment for utilities and did not supply the required documentation for continued assistance.

We will cancel your Section 8 Voucher effective **July 25, 2012**. You must inform your Landlord of your decision to vacate the property by giving a 30-Day Notice.

**Please be advised that if you need assistance at a later date, it will be necessary for you to reapply for the program during the application period.**

Thank you for your cooperation in this matter. Should you have questions or concerns, please do not hesitate to contact me.

Sincerely,

Leiroschelle Johnson
(415) 715-3144

cc:     client file
        landlord

*10*